TIMOTHY C. BOURNE *vs.* WILLIAM P. WHITMAN.

MAY A. DAVIS *vs.* SAME.

TIMOTHY C. BOURNE *vs.* RICHARD P. WHITMAN.

MAY A. DAVIS *vs.* SAME.

Barnstable.　　March 9, 10, 1911. — May 19, 1911.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Negligence,* In use of highway, Law of road, In driving automobile, Violation of statute. *Practice, Civil,* Conduct of trial, Exceptions. *Law of the Road. Automobile. Agency,* Existence of relation. *Words,* "Riding with," "Accompanied by."

In an action for injuries caused by a collision of two automobiles when being driven upon a highway in opposite directions, the defendant asked for the following instruction: "If the jury find that at the time of the accident the defendant was driving on the right of the middle of the travelled part of the way, it is evidence of the exercise of due care on his part, and if the jury shall find that the plaintiff was driving his machine in an opposite direction and collided with the defendant, this is evidence that the plaintiff was acting in violation of R. L. c. 54, § 1, requiring him to drive to the right of the middle of the travelled part of the road, and unexplained indicates negligence on the part of the plaintiff." There was evidence to which this instruction was applicable, and there also was other evidence bearing upon the questions whether the plaintiff was in the exercise of due care and whether the defendant was negligent. The presiding judge refused to give the instruction. *Held,* that, although the instruction requested was a correct statement of the law and properly might have been given by the judge, yet, there having been other evidence in the case with which the request did not deal, the judge in his discretion was not bound to give the instruction in the form requested, because it selected evidential facts that might or might not be found by the jury and separated them from other parts of the evidence as the subject of a special instruction as to their effect.

St. 1903, c. 473, § 4, relating to the issuing by the highway commission of licenses for operating automobiles and motor cycles, as amended by St. 1905, c. 311, § 4, contains the following clause: "The provisions of this section shall not prevent the operation of automobiles by unlicensed persons if riding with or accompanied by a licensed chauffeur or operator." Section 5 of St. 1903, c. 473, declares that "Except as hereinafter provided" no person shall operate an automobile or motor cycle "unless specially licensed by the commission so to do." *Held,* that the failure of the Legislature to change the word "hereinafter" to "herein" in § 5, when making the above-quoted amendment to § 4, was a mere inadvertence, which does not affect the construction of the statute, and that under the authority of the amendment an unlicensed person may operate an automobile if riding with or accompanied by a licensed chauffeur or operator.

In the provision of St. 1903, c. 473, § 4, as amended by St. 1905, c. 311, § 4, that an unlicensed person may operate an automobile "if riding with or accompanied by a licensed chauffeur or operator," the words "riding with or accompanied by" contemplate a proximity sufficient to enable the licensed operator to maintain such supervision as may be necessary for safety and to render assistance.

Under St. 1903, c. 473, § 4, as amended by St. 1905, c. 311, § 4, if an unlicensed person, who is operating an automobile "riding with or accompanied by a licensed chauffeur or operator," is a.person of great skill and experience, whose license expired only the day before and who is expecting another license within a day or two, the supervision and reasonable proximity of the accompanying operator required by the statute are not so constant and so close as would be required if the unlicensed person were one learning to use an automobile, but, in order to establish the relation contemplated by the statute, both of the persons must have knowledge that the actual operator is unlicensed and that the licensed chauffeur or operator accompanying him is in a position to advise or assist him with reasonable promptness, if necessary.

Under the provisions of St. 1903, c. 473, § 5, that no person shall "operate an automobile or motor cycle upon any public highway or private way laid out under authority of statute unless licensed so to do under the provisions of this act," and that "No person shall operate an automobile or motor cycle for hire, unless specially licensed by the commission so to do," the operation of an automobile upon a highway without a license, although by other provisions of the statute it is made a punishable act, does not render the operator a trespasser on the highway.

In an action for injuries caused by a collision of automobiles when being driven upon a highway in opposite directions, the fact that the defendant was violating the provisions of St. 1903, c. 473, § 5, by operating an automobile upon a public highway without a license, is only evidence of his negligence in reference to his fitness to operate a car and to his skill in the actual management of it.

Explanation by KNOWLTON, C. J., of the different consequences resulting from a violation of St. 1903, c. 473, § 3, by operating an unregistered automobile upon a highway and a violation of § 5 of the same chapter by operating a registered automobile upon such highway without a license as a chauffeur or operator.

At the trial of an action against the owner of an automobile for injuries caused by its collision with another automobile in which the plaintiff was driving, it appeared that the defendant's automobile was being driven by the defendant's son, nineteen years of age. The defendant contended that at the time of the accident his son was not operating the automobile as his servant but on the son's own account. The weight of the testimony was that the son was using the automobile with his father's permission solely for his own purposes. There was evidence, however, that the son was employed regularly by his father as chauffeur, that he lived in his father's family, that persons whom he brought in the automobile to a dance on the evening of the accident and carried home again just before the accident, were in the presence of his father and his father's family at the dance, and that his father saw him start to take them home from the dance, and told him that he had better light his headlights. *Held,* that there was evidence for the jury on the question whether the son was representing his father in operating the automobile at the time of the accident.

FOUR ACTIONS OF TORT, by two plaintiffs severally against two defendants severally, for personal injuries and damage to an automobile of the plaintiff Bourne from being run into by an automobile belonging to the defendant William P. Whitman alleged to have been driven negligently by the defendant Richard P. Whitman, who was alleged to have been the agent and

servant of the defendant William, on the main road from Bourne to Falmouth in that part of Falmouth called West Falmouth, near a bridge over the tracks of the New York, New Haven, and Hartford Railroad Company, on the evening of August 15, 1908. Writs dated December 7, 1908.

In the Superior Court the case was tried before *Bell*, J. The plaintiffs put in evidence four applications signed by the defendant Richard P. Whitman to the Massachusetts highway commissioners for a chauffeur's license, dated July 19, 1906, and in 1907, 1908, and 1909, in each of which in answer to the written questions in the applications, asking by whom he was employed and for whom he operated, the defendant Richard stated that he was employed by and operated for William P. Whitman. The plaintiffs also put in evidence two applications to the highway commissioners signed by the defendant William P. Whitman for the registration of the car involved in the accident, in the first of which dated August 24, 1907, William P. Whitman stated that he employed Richard P. Whitman as chauffeur, and in the second of which dated March 23, 1908, he stated that he employed one Lemuel W. Davis as chauffeur. The statements of facts in all of the applications were sworn to.

At the time of the accident, William P. Whitman's car was legally registered by the highway commissioners under a registration dated March 17, 1908.

The plaintiffs also put in evidence the records of the Massachusetts highway commissioners showing that the chauffeur's license issued to Richard P. Whitman expired by its own limitation on the day before the accident, to wit, on August 14, 1908, and that upon the day of the accident, August 15, 1908, Richard P. Whitman held no license to drive an automobile.

The defendants put in evidence the application of Richard P. Whitman to the highway commissioners dated and filed August 13, 1908, for a renewal of his license as a chauffeur, upon which a license was issued to him on August 17, 1908.

The plaintiffs offered evidence tending to show that on the evening of the accident they had been to Onset Bay and were returning by the State highway leading from Buzzards Bay through Megansett and North Falmouth to Falmouth, that the headlights and side lamps of their car were lighted properly and

burning; that as they approached the place of the accident, going in a southerly direction, the highway ascended a grade and turned to the left across a bridge over the railroad track; that, at a distance approximately three hundred feet from the place of the accident, Bourne, who was driving the car, reduced its speed to approximately ten miles an hour and continued at that rate up to the time of the collision; that for three hundred feet before the collision and at the time of the collision he had been driving with his left wheels in the centre of the travelled part of the highway in the direction in which he was going; that as he approached the curve he sounded his horn and both plaintiffs were looking and watching ahead; that suddenly the car of the defendants came around the curve at a very high rate of speed; that the search lights were not lighted but side lamps were lighted and that the car came in contact with the left hand front end of the plaintiff's car. The force of the collision threw both plaintiffs out of the car and caused the personal injuries and the damage to the car complained of.

The defendants introduced evidence that William P. Whitman was a resident of Brockton, but that at the time of the accident he was living at his summer home in North Falmouth; that on the night of the accident the defendant Richard P. Whitman was desirous of attending a dance which was to be held at Megansett, a village of Falmouth, and wished to take with him three friends who lived at Falmouth Heights, another village of Falmouth, some distance south of Falmouth Centre and several miles from Megansett; that at about seven o'clock on the night of the accident the defendant Richard P. Whitman asked his father William P. Whitman whether he could take the car, as he wanted to go to Falmouth to get some of his friends to take them to a dance at Megansett, and that the elder Whitman told him he could take it; that the defendant Richard took the car and took with him Dr. Harold O. Hunt and Harold O. Fraser, two other friends of his, and carried them from North Falmouth to Falmouth Centre, leaving them there, and agreed to get them later in the evening after the dance and return with them to North Falmouth; that after leaving Hunt and Fraser, he continued on to Falmouth Heights, got his three friends, and returned by the same route through Falmouth and attended

the dance at Megansett; that after the dance, at about 10.30 o'clock, William P. Whitman in front of the dance hall at Megansett saw Richard, who was about to return with his three friends to Falmouth Heights; that at that time the headlights of the car were not lighted and the elder Whitman told Richard that he had better light his headlights; that the elder Whitman did not see either the car or his son again until after the accident; that after leaving the dance Richard carried his three friends to Falmouth Heights and left them there, returning to Falmouth Centre alone where he stopped and took Dr. Harold O. Hunt and Harold O. Fraser into the car and continued toward North Falmouth; that it was a bright moonlight night with the moon nearly full; that the headlights were not lighted because the water connection with the generator was broken and they could not be lighted; that the side lights were lighted; that they proceeded in a northerly direction and went about a mile before reaching the bridge near which the accident occurred; that the defendant Richard was driving; that Harold O. Fraser sat beside him at his left and Dr. Hunt sat in the tonneau of the car, leaning forward between the other two men; that after leaving Falmouth and before reaching the bridge the three men were talking together and eating candy; that as they approached the bridge the speed of the car was about twenty miles per hour; that the defendant blew his horn three or four times; that upon reaching the southerly side of the bridge the defendant Richard shut off his power and coasted across the bridge; that his right hand wheels on reaching the bridge were within six feet of the fence at the side of the road on his right side; that as he crossed the bridge his car gradually drew nearer to the fence, and when he left the northerly side of the bridge his right wheels were within four feet of the fence on his right hand side; that his speed on leaving the bridge was approximately ten or twelve miles an hour; that after leaving the bridge the road curved to the right and his car continued to draw nearer to the right hand side of the road; that, on rounding the curve and about twenty-five or thirty feet from the bridge, all three who were in the defendant's car saw the plaintiff's car coming towards them at a distance of about thirty or forty feet; that there were no lights lighted on the plaintiff's car; that instantly the defendant

Richard "hollered at" the plaintiffs and applied both his foot brakes and emergency brake and locked the rear wheels of his car; that this caused the car to come nearly to a standstill; that the plaintiffs were approaching them at a speed of from twenty to thirty miles per hour and were almost directly in front of the defendant's car, the plaintiff Bourne being on Bourne's extreme left hand side of the road; that Bourne suddenly turned his car to his right, but was too near to avoid a collision; that the left hand frame of Bourne's car struck the radiator and left hand frame of the defendant's car a glancing blow, drove the radiator back about four inches on that side, broke off the end of the frame and demolished the left hand front wheel; that the defendant's car, when struck, tipped over toward the fence on its right hand side and the side iron which holds the top in place struck the fence and was bent; that the right hand rear wheel of the defendant's car was crushed, as the wheels were locked and could not be moved backwards; that the force of the impact threw both the plaintiffs forward and out of their car and caused the rear end of their car to slew toward the middle of the road, leaving the front of the plaintiff's car within three or four feet of the front of the defendant's car.

The defendants, in justification of the action of Richard P. Whitman in operating the car, offered to prove that at the time of the accident Dr. Harold O. Hunt, who was riding with and accompanying Richard P. Whitman, was the holder of an operator's license, and had it in his possession, it having been duly issued by the Massachusetts highway commissioners, empowering him to operate an automobile upon the highways, and the defendants offered also the record of the highway commission showing that the license had never been suspended or revoked by the commission and at the time of the accident was in full force and effect, contending that the defendant Richard, not being a person who had been licensed and whose license was not then in force because of revocation or suspension for cause, had, by virtue of the license held by Hunt, a legal right to operate the automobile upon the highway.

Upon objection by the plaintiffs, the judge refused to allow the introduction of this evidence and ruled that the presence of Hunt in the automobile with the defendant Richard P. Whit-

man at the time of the accident, notwithstanding the fact that Hunt possessed a license to operate an automobile, did not justify the defendant Richard P. Whitman in operating the automobile upon the highway at the time of the accident.   The defendants excepted.

The defendant Richard P. Whitman, on his cross-examination, admitted filling out in his own handwriting and signing the application to the highway commissioners for a license.   The date of this application was August 13, 1908.   In answer to the question, " Are you operating for some other person? " he wrote in his own handwriting, " My father, William P. Whitman."   " Q.   What is your employer's name ? "   " A.   William P. Whitman, 1362 Main Street, Brockton."   The witness continued, that he drove for his father in the summer, but not for hire; that he did drive for him every summer that he was at home; that he took care of the automobile, and that there was nobody else who drove for his father in the summer except the witness; that his father did not drive his own car, but that he, the witness, was the driver.   In his application of August 13, 1908, he said that he had driven the car forty thousand miles, and that in 1908 he was nineteen years old.   He went to school each year and drove his automobile only during the summer; it had taken him four or five summers to drive forty thousand miles.   He had had a license in 1905, 1906, 1907, and to August, 1908.   He had been driving for his father since 1905, and during the summer was his father's regular driver and the only one he had.   He said that every time he took the machine out, unless accompanied by his mother, he asked his father's permission.

The defendant also introduced the testimony of William P. Whitman, the father, as follows: The witness said that he owned the car which Richard was driving; that some time at Megansett on the day or night of August 15 his son had a talk with him about using the car.   His son asked him whether he could take the car, and said that he wanted to go to Falmouth Heights and meet some friends and bring them to a dance at Megansett. The witness told him he could take it; the witness met him later with his friends at Megansett at 10.30 at the Megansett Casino and spoke with him; saw him start to take his friends

back to Falmouth Heights and told him that he had better light his headlights.    On cross-examination the witness testified that he was a resident of Brockton and had been engaged in business there for a number of years in the manufacture of shoes.    There was evidence upon which the jury could find that William P. Whitman was a successful business man with a large interest in the company of which he was president; that Richard P. Whitman, the son, at the time of the accident was a minor and was about to enter Dartmouth College.

At the close of all the evidence, the defendant William P. Whitman asked the judge to rule that there was no evidence to go to the jury that at the time and place of the accident the defendant Richard P. Whitman was acting as his, William's, agent and servant, but that all the evidence in the case showed that Richard was using the automobile upon his own affairs, and asked the judge to order a verdict for the defendant William P. Whitman in both cases against him.    The judge refused so to rule, stating that he believed this to be a question of fact, which must be submitted to the jury.    The defendant William P. Whitman excepted.

The plaintiffs asked the judge to give the following instructions :

1.  " Richard P. Whitman, at the time of the accident, was operating his automobile without license and contrary to law, and the possession of a license by another person riding with him affords him no justification."

2.  " Richard P. Whitman at the time of the accident was a trespasser upon the highway and had no legal right then and there to operate a car."

The judge gave these instructions to the jury, and the defendants excepted.

The defendants, among other requests, asked the judge to instruct the jury as follows: " If the jury find that at the time of the accident the defendant was driving on the right of the middle of the travelled part of the way, it is evidence of the exercise of due care on his part, and if the jury shall find that the plaintiff Bourne was driving his machine in an opposite direction and collided with the defendant, this is evidence that the plaintiff was acting in violation of R. L. c. 54, § 1, requiring

him to drive to the right of the middle of the travelled part of the road, and unexplained indicates negligence on the part of the plaintiff." The judge refused to give this instruction, and the defendants excepted.

The judge submitted the cases to the jury, who at first returned a verdict for Bourne against William P. Whitman in the sum of $1,000 and for Davis against the same defendant in the sum of $100. In response to an inquiry of the judge, the jury said that they had not considered the cases against Richard P. Whitman. The judge then instructed the jury to retire again and to consider the cases against Richard P. Whitman as if there were no question of agency between Richard and William. The jury retired, and subsequently returned verdicts in the same amounts against Richard P. Whitman. The counsel on both sides were present and did not object to this course, it being agreed by the parties that, if the defendants' exceptions were overruled, the plaintiffs should elect as to which of the defendants they would proceed against. Both of the defendants alleged exceptions.

*E. H. Fletcher*, for the defendants.

*C. F. Choate, Jr.*, for the plaintiffs.

KNOWLTON, C. J. These are actions to recover for injuries received from a collision between two automobiles, in one of which were the two plaintiffs. The accident happened late in the evening of August 15, 1908. The defendants asked the judge to instruct the jury as follows : " If the jury find that at the time of the accident the defendant was driving on the right of the middle of the travelled part of the way, it is evidence of the exercise of due care on his part, and if the jury shall find that the plaintiff Bourne was driving his machine in an opposite direction and collided with the defendant, this is evidence that the plaintiff was acting in violation of R. L. c. 54, § 1, requiring him to drive to the right of the middle of the travelled part of the road, and unexplained indicates negligence on the part of the plaintiff." There was evidence to which the request was applicable. There was also other evidence bearing upon the questions whether the plaintiffs were in the exercise of due care and whether the defendants were negligent. The request was in accordance with the law as laid down in *Perlstein* v. *American Express Co.* 177 Mass. 530, and in other cases, and it well

might have been given.  Perhaps the defendants properly might have gone further and have asked for an instruction that if the jury found the facts stated in the request, and also found that this violation of the statute was one of the direct and proximate causes of the collision, the plaintiff Bourne could not recover.  *Newcomb* v. *Boston Protective Department*, 146 Mass. 596.

The plaintiffs' contention is that the judge was not bound to grant the request, because it asked for a ruling upon the effect of a particular part of the evidence, upon a question on which there was other testimony.  It is true that the general subject of the plaintiff's care and the general subject of the defendant's negligence were involved in the two branches of the request, and there was other important testimony bearing upon each of these subjects.  Applying the rule strictly, we are of opinion that the judge was not bound to comply with a request in this form, and to select evidential facts that might or might not be found by the jury, and separate them from other parts of the testimony as subjects for a special instruction upon their effect as evidence.  *Hicks* v. *New York, New Haven & Hartford Railroad*, 164 Mass. 424 and cases cited.

One of the defendants was a father, who owned the automobile, and the other was his minor son nineteen years of age, who operated it as his chauffeur a part of each year, without compensation.  One of the questions before the court was whether the son, Richard P. Whitman, was acting as his father's servant at the time of the accident, or was running the automobile for himself alone.  He had had a license to operate an automobile as chauffeur for his father, William P. Whitman, in 1905, 1906, 1907 and 1908, up to August 14, 1908, when the license expired.  He had made an application for another license which was issued to him on August 17.  On August 15, 1908, the day of the accident, he was operating the machine without a license. The evidence tended to show that he was of large experience in this business and presumably thoroughly competent.

The defendants offered to prove that Dr. Harold O. Hunt, who was riding with Richard P. Whitman in the automobile, was the holder of an operator's license which he had with him at the time of the accident.  This evidence was excluded and

the judge ruled that the possession of a license by another person riding with him, afforded him no justification.

This brings us to the consideration of the language in the St. 1903, c. 473, § 4, as amended by the St. 1905, c. 311, § 4, as follows: " The provisions of this section shall not prevent the operation of automobiles by unlicensed persons if riding with or accompanied by a licensed chauffeur or operator." These words were originally in the St. 1903, c. 473, § 6, and this section was repealed by St. 1905, c. 311, § 7. In the repealing statute they were inserted in § 4 of the former act by an amendment of that act, but the word " hereinafter " in § 5 of St. 1903, c. 473, was not changed to " herein," as it should have been when the quoted language which previously had followed this word was now made to precede it by putting it in the earlier section. We are of opinion that the failure to make this change was a mere inadvertence, and that an unlicensed person may operate an automobile, if riding with or accompanied by a licensed chauffeur or operator, under the authority of St. 1903, c. 473, § 4, as amended by the St. 1905, c. 311, § 4.

The exclusion of the evidence and the ruling were at variance with the provision relied on by the defendants, if the language is taken literally and interpreted broadly. What is the meaning of the language? Evidently it was intended to provide an opportunity for persons to learn to use an automobile by running it under the supervision of a licensed person, and thus acquire skill by practice, without which one never could become skilful. It does not necessarily mean that the unlicensed operator shall be under the legal control of the licensed chauffeur, for the operator might be the owner of the automobile, and the chauffeur, a person hired by him to give instructions under his direction. But the language of the statute undoubtedly contemplated by the words, "riding with or accompanied by," proximity sufficient to enable the licensed operator to maintain such supervision as might be necessary for safety, and to render assistance, if need be, with reasonable promptness. In a case like the present, where the unlicensed operator was a person of skill and great experience, whose license had expired only the day before and who was expecting another license within a day or two, the supervision and reasonable proximity required by law would

not be as close as in ordinary cases, but we are of opinion that the law contemplates at least knowledge on the part of both persons, of the existence of a relation like that of operator without a license, and licensed chauffeur or operator accompanying him, in a position to advise or assist with reasonable promptness, if necessary.

Neither the offer of proof nor the ruling shows plainly what construction was put upon the statute by the judge. He may have made his ruling on the ground that the defendants did not go far enough in their offer, to bring the case within the authority of the statute. As the burden of showing error is on the excepting party, we are inclined to hold that the offer did not go far enough and that no error is shown. But if the relation between the defendant Richard P. Whitman and Dr. Hunt was that contemplated by the statute and known to both of them, we are of opinion that the defendant was protected, even if it was not expected that any particular supervision would be required, and if they were not in such proximity as would be necessary for safety between a licensed chauffeur and an unlicensed operator just beginning to learn to manage a machine.

At the request of the plaintiffs, the judge instructed the jury that " Richard P. Whitman at the time of the accident was a trespasser upon the highway and had no legal right then and there to operate the car." Under the first part of the instruction the plaintiffs owed him no duty except to refrain from inflicting an injury upon him wantonly or recklessly. He had no right to put his car in the way of the plaintiffs, or to interfere with their use of the road in any part which they chose to occupy. The rights and duties of both parties were different from those of ordinary travellers. Presumably the instruction affected the decision, and if it was erroneous, there must be a new trial.

For the discussion of this part of the case, we assume that the defendant Richard received no protection from Dr. Hunt's license. He was then violating the law in not having obtained another license before running the car. What effect did this violation have upon the right of either party to recover, when there was an accidental collision between his car and that of another driver on the highway?

It is universally recognized that the violation of a criminal

statute is evidence of negligence on the part of the violator, as to all consequences that the statute was intended to prevent. It has been said in a general way that such a violation is evidence of negligence of the violator, and it has sometimes been stated that this would show negligence, that can be availed of as a ground of recovery by one who suffers any kind of an injury from him while this illegality continues ; but it is now settled that it is not even evidence of negligence, except in reference to matters to which the statute relates. *Davis* v. *John L. Whiting & Son Co.* 201 Mass. 91, 96 and cases cited. A criminal statute in the usual form is enacted for the benefit of the public. It creates a duty to the public. Every member of the public is covered by the protecting influence of the obligation. If one suffers injury as an individual, in his person or his property, by a neglect of this duty, he has a remedy, not because our general criminal laws are divided in their operation, creating one duty to the public and a separate duty to individuals ; but because as one of the public in a peculiar situation, he suffers a special injury, different in kind from that of the public generally, from the neglect of the public duty. As was said by Mr. Justice Matthews in *Hayes* v. *Michigan Central Railroad*, 111 U. S. 228, 240 : " The duty is due not to the city as a municipal body, but to the public, considered as composed of individual persons ; and each person specially injured by the breach of the obligation is entitled to his individual compensation, and to an action for its recovery." Intimations that there is a separate and distinct duty to individuals under general criminal laws, are not in accordance with sound reasoning or the weight of authority.

If we consider the effect of such a violation of law by a plaintiff, upon his right to recover, the principles that have been recognized are instructive. They were considered long ago in connection with our Sunday law. It has been established from early times that one who is violating a criminal law cannot recover for an injury to which his criminality was a directly contributing cause. It was early held in this State that one travelling in violation of the statutes as to the observance of the Lord's day, could not recover for an injury received while so travelling. *Smith* v. *Boston & Maine Railroad*, 120 Mass. 490 and cases cited. *Lyons* v. *Desotelle*, 124 Mass. 387. *Day* v.

*Highland Street Railway*, 135 Mass. 113.    *White* v. *Lang,* 128 Mass. 598.    *McGrath* v. *Merwin,* 112 Mass. 467.    These decisions on the Sunday law have been much criticised in the opinions of other courts and by writers of textbooks.    *Broschart* v. *Tuttle,* 59 Conn. 1.    *Sutton* v. *Wauwatosa,* 29 Wis. 21.    *Baker* v. *Portland,* 58 Maine, 199.    *Baldwin* v. *Barney,* 12 R. I. 392. *Johnson* v. *Irasburgh,* 47 Vt. 28.    *Platz* v. *Cohoes,* 89 N. Y. 219. The ground of the criticism may be stated in a word, as a supposed failure to distinguish between criminality which is a cause, and criminality which is a mere condition of an injury for which recovery is sought.    But this distinction is now thoroughly established in our law. · *Newcomb* v. *Boston Protective Department,* 146 Mass. 596.    *Farrell* v. *Sturtevant Co.* 194 Mass. 431, 434.    *Moran* v. *Dickinson,* 204 Mass. 559, 562.    The Sunday law, so called, has been repealed as to its effect as a bar to recovery in actions of tort showing a violation of it by the plaintiff.    R. L. c. 98, § 17.    The old case of *Gregg* v. *Wyman,* 4 Cush. 322, as to the effect of the Sunday law in barring a claim in trover against one who had driven a horse hired for service on Sunday to a different place from that agreed upon, was overruled by this court before the partial repeal of the Sunday law.    *Hall* v. *Corcoran,* 107 Mass. 251.    Other cases have been decided, in which it was held that illegality of the plaintiff was no bar to his recovery for an injury, unless his illegality was a cause directly contributing to the injury.    *Damon* v. *Scituate,* 119 Mass. 66.    *Smith* v. *Gardner,* 11 Gray, 418. *Dudley* v. *Northampton Street Railway,* 202 Mass. 443, 446. *Moran* v. *Dickinson,* 204 Mass. 559.

The only matter which seems to be left doubtful under our decisions in this class of cases, is what constitutes "illegality," which is sometimes a directly contributing cause of the injury. · Some cases have been decided, which seem to imply that if there is an illegal element entering into a plaintiff's act or conduct, and this act or conduct directly contributes to his injury, he cannot recover, although the illegal element or the objectionable quality of the act had no tendency to produce the injury, and the consequences would have been the same under the other existing conditions, if the criminal element had been absent.    In other cases the decision seems to turn upon whether the criminal

element in the act or conduct, considered by itself alone, operated as a direct cause to produce a result that would not have been produced under the same conditions in other respects, if the criminal element had been absent. This latter seems to be the pivotal question in most cases decided in other States.

The fact that the number of punishable misdemeanors has multiplied many times in recent years, as the relations of men in business and society have grown complex with the increase of population, is a reason why the violation of a criminal statute of slight importance should not affect one's civil rights, except when this violation, viewed in reference to the element of criminality intended to be punished, has had a direct effect upon his cause of action. Our decisions seem to have been tending toward the adoption of such a rule. *Welch* v. *Wesson*, 6 Gray, 505. *Spofford* v. *Harlow*, 3 Allen, 176. *Steele* v. *Burkhardt*, 104 Mass. 59. *Damon* v. *Scituate*, 119 Mass. 66. *Hall* v. *Ripley*, 119 Mass. 135. *Dudley* v. *Northampton Street Railway*, 202 Mass. 443, 446. *Moran* v. *Dickinson*, 204 Mass. 559, 562. *Chase* v. *New York Central & Hudson River Railroad*, 208 Mass. 137, 157.

Under particular statutes, we are brought back to the question, what is the legal element which is the essence of the command or prohibition? In most cases, the effect of doing or failing to do that which the law forbids or requires under a penalty, when considered in reference to its relation to one's civil rights in collateral matters, ought to be limited pretty strictly. Take the case of driving without sleigh bells in violation of the law of the road. R. L. c. 54, § 3. *Kidder* v. *Dunstable*, 11 Gray, 342. *Counter* v. *Couch*, 8 Allen, 436, 437. The requirement of the law is that " No person shall travel on a bridge or way with a sleigh or sled drawn by a horse, unless there are at least three bells attached to some part of the harness." The wrong to be prevented is the failure to have bells while travelling in this way. The travelling in other respects is unobjectionable. The question arises whether the act should be deemed illegal as a whole, in reference to the rule that the courts will not aid one to obtain the fruits of his disobedience of law, or whether in this aspect its different qualities may be considered separately. It is possible to decide this question either way, but we think it is more consistent with justice and with

the course of decision elsewhere, to hold that, in reference to the law of negligence and the rule as to rejection of causes of action that are founded on illegality, an act may be considered in its different aspects in its relation to the cause of action, and if only that part of it which is innocent affects the cause of action, the existence of an illegal element is immaterial. We do not think, under this statute, that one who drives in a sleigh without bells should be treated as a trespasser on the highway, although he is punishable criminally for the failure to have the bells attached to the harness, and is liable in damages to any member of the public who suffers a special injury by reason of this failure.

Consider the St. 1909, c. 514, § 74, which forbids, under a penalty, the regular operation of any elevator by a person under the age of sixteen years, and the regular operation of any rapidly running elevator by a person under the age of eighteen years. If a person under the prescribed age, while employed to operate an elevator, is injured through the negligence of the owner, in leaving it in an unsafe condition, shall his violation of the statute by entering this service before reaching the prescribed age, be treated as criminality, entering into every one of his acts in moving the elevator, so as to prevent his recovery for an injury from the joint effect of his employer's negligence and his own application of the power to raise or lower the elevator? We think it better to hold, if his age and the degree of his competency, which might depend in part upon his age, had no causal connection with the injury, that his criminality was not a direct cause of the injury. In other words, that the punishable element in the act is only disobedience as to age, and although his act in applying the power to the elevator which brought him in contact with the defect, is punishable, and in a sense illegal because of the existence of that element, in determining the relation of his conduct to the cause of action, to see whether the court will aid him in the prosecution of it, we ought to limit the illegality to that part of his conduct towards which the statute is particularly directed. We are to consider the specific thing at which the statute is aimed, and the immediate effect that it was intended directly and proximately to accomplish by its command or prohibition. A question of this kind arose in *Murphy* v. *Russell*, 202 Mass. 480, but it was not referred to in

the opinion, as the case was decided on other grounds.   Substantially, this question was decided in *Moran* v. *Dickinson*, 204 Mass. 559.

Take the provision in St. 1903, c. 473, § 5, that " No person shall operate an automobile or motor cycle for hire, unless specially licensed by the commission so to do," and the earlier provision in the same section that no person shall " operate an automobile or motor cycle upon any public highway or private way laid out under authority of statute unless licensed so to do under the provisions of this act."   The operating of the automobile in itself is unobjectionable.   The illegal element in the act is the failure to have a license.   The purpose of the requirement of a license is to secure competency in the operator. If in any case the failure to have a license, looking to those conditions that ordinarily accompany the failure to have it, is a cause contributing directly to an injury, a violator of the law would be legally responsible to another person injured by the failure ; or, if he is injured himself, would be precluded from recovery against another person who negligently contributed to the injury.   But we are of opinion that his failure in that respect is only evidence of negligence in reference to his fitness to operate a car, and to his skill in the actual management of it, unless in the case of the plaintiff, it is shown to be a contributing cause to the injury sued for, in which case it is a bar to recovery.   We think that the operation of a car without a license, while it is a punishable act, does not render the operator a trespasser on the highway, but that the illegal element in the act is only the failure to have a license while operating it, so that if the operation and movement contributed to the accident with which the want of a license had no connection, except as a mere condition, they would not preclude the operator as a plaintiff from recovery.   If the illegal quality of the act had no tendency to cause the accident, the fact that the act is punishable because of the illegality, ought not to preclude one from recovery for harmful results to which, without negligence, the innocent features of the act alone contributed.

The other part of this statute, relative to the licensing of automobiles, has been construed differently.   In *Dudley* v. *Northampton Street Railway*, 202 Mass. 443, because of the peculiar

provisions of the statute and the dangers and evils that it was intended to prevent, it was decided, after much consideration, that the having of such a machine in operation on a street, without a license, was the very essence of the illegality, and that the illegality was inseparable from the movement of the automobile upon the street at any time, for a single foot; that in such movement the machine was an outlaw, and any person on the street as an occupant of the automobile, participating in the movement of it, was for the time being a trespasser. Some of us were disinclined to lay down the law so broadly, and the opinion of the court was not unanimous; but the doctrine has been repeatedly reaffirmed and is now the established law of the Commonwealth. *Feeley* v. *Melrose,* 205 Mass. 329. *Chase* v. *New York Central & Hudson River Railroad,* 208 Mass. 137, 158. The difference between this provision of the statute and that involved in the present case is in part one of form, but in connection with the form, it is still more the seeming purpose and intent of the Legislature as to permitting such machines upon the public ways without adequate means of identifying them and ascertaining their owner, together with the requirement that the machine itself, as a thing of power, shall have its own registration and legalization, the evidence of which it shall always carry with it. In the last of the cases cited is this language: "Under the decisions, the operation of the unregistered automobile is deemed to be unlawful in every feature and aspect of it. Everything in the conduct of the operator that enters into the propulsion of the vehicle is under the ban of the law. . . . The operator, in running it there and thus bringing it into collision with the locomotive engine, is guilty of conduct which is permeated in every part by his disobedience of the law," etc.

We are of opinion that the law of these last cases should not be extended to the provision of the statute requiring every operator to have a personal license to operate the car. The jury should have been instructed that the defendant's failure to have a license was only evidence of his negligence as to the management of the car.

An important question at the trial was whether there was any evidence that Richard P. Whitman was operating the automobile as the servant of his father, at the time of the accident, or only on

his own account.    The weight of the testimony was that he was using it with his father's permission, solely for his own purposes. But we are of opinion that the circumstances that he was the regularly employed chauffeur of his father, that he lived in his father's family, that the persons whom he brought to the dance in the evening and carried home again just before the accident, were in the presence of his father and his family at the dance, that his father saw him start to take them home from the dance and told him he had better light his headlights, were proper for the consideration of the jury on the question whether he was representing his father in running the automobile at the time of the accident.

*Exceptions sustained.*