Rich *v.* Finley.

ALAN E. RICH *vs.* FREDERICK W. FINLEY
(and a companion case[1]).

Hampden.     September 21, 1949. — December 6, 1949.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & COUNIHAN, JJ.

*Aircraft. Negligence,* Aircraft, Violation of law. *Proximate Cause. Evidence,* Res gestae, Declaration of deceased person, Of consciousness of liability. *Trespass. Nuisance. Motor Vehicle,* What constitutes. *Practice, Civil,* Verdict; Exceptions: whether error harmful. *Jury and Jurors. Error,* Whether error harmful. *Agency,* What constitutes. *Words,* "Motor vehicle."

At the trial of an action by the owner and operator of an airplane against the operator of another airplane, where there was evidence that the defendant repeatedly caused his plane to dive toward the plaintiff's plane and that, on his last approach, one, who was sitting with the plaintiff for instruction at dual controls, "froze on the controls," causing the plane to crash and killing the plaintiff's pupil, evidence properly was admitted, both as part of the res gestae and also as a declaration of a deceased person under G. L. (Ter. Ed.) c. 233, § 65, as appearing in St. 1943, c. 232, § 1, that, as the pupil "froze on the controls," he screamed "Here he comes."

Evidence, at the trial of an action by the owner and operator of an airplane against the operator of another plane, that, while the plaintiff was instructing a pupil at dual controls in his plane, the defendant caused his plane to make repeated "passes" aimed at the plaintiff's plane, diving under it, and that finally, as he again was aiming at the plaintiff's plane, the plaintiff's pupil screamed, "Here he comes," and seized and "froze on" the controls, causing the plaintiff's plane to crash, warranted findings that the conduct of the defendant was negligent in that it placed the plaintiff in substantial and unnecessary peril, and that his negligence was the proximate cause of the crash.

A rule, made by the Massachusetts aeronautics commission under G. L. (Ter. Ed.) c. 90, § 39, as appearing in St. 1939, c. 393, § 3, that "The pilot in command of an aircraft shall be directly responsible for its safe operation," was not the equivalent of the provision as to motor vehicles contained in the first sentence of G. L. (Ter. Ed.) c. 90, § 10, as appearing in St. 1935, c. 219, and there was no violation of that rule precluding recovery in an action by the owner and operator of an air-

[1] The companion case is that of the same plaintiff against Standard Air Service, Inc.

plane equipped with dual controls against one whose negligent operation of another plane caused a pupil of the plaintiff at the dual controls to seize and "freeze on" the controls and the plaintiff's plane to crash, if the plaintiff did all that he reasonably could in the circumstances to see that his plane was operated safely.

The facts that one instructing a pupil in an airplane equipped with dual controls was not a "certificated instructor" within G. L. (Ter. Ed.) c. 90, § 47, as appearing in St. 1939, c. 393, § 3, and that he had not registered his Federal airman's certificate in Massachusetts as required by § 49, as so appearing, did not as matter of law preclude recovery by him for injury resulting from a crash of his plane caused by negligence of the operator of another plane.

A failure of the owner and operator of an airplane to register in this Commonwealth the Federal certificate for his plane as required by G. L. (Ter. Ed.) c. 90, § 49, as appearing in St. 1939, c. 393, § 3, did not constitute the plane a trespasser in the air and a nuisance.

Evidence that the operator of a rented airplane, in returning it to the owner after his operation had caused another plane to crash, used another name than his own, would be competent evidence against him as indicating consciousness on his part of liability for the accident.

It was error in an action at law to receive and record a verdict which, although prepared, signed and sealed before the jurors separated, was opened in court the morning of the following day after the death of one of the jurors meanwhile, and then was verified in open court by the assent of only the remaining eleven jurors.

An error in receiving and recording a verdict for the plaintiff on verification in open court by only eleven jurors after the death of the twelfth did not require disturbing of the entry of a verdict for the defendant on leave reserved, where the evidence disclosed that a motion, made by the defendant at the close of the evidence, that a verdict be ordered in his favor should have been granted.

The provisions of G. L. (Ter. Ed.) c. 231, § 85A, do not apply to an action arising out of an accident or collision in which only airplanes were involved.

Two ACTIONS OF TORT. Writs in the Superior Court dated March 12, 1947.

The actions were tried before *Giles*, J.

*E. Hutchings*, (*R. C. Jandreau* with him,) for the defendants.

*H. A. Moran, Jr.*, (*H. A. Moran* with him,) for the plaintiff.

QUA, C.J. These actions are based upon the alleged negligent operation by the defendant Finley of an airplane owned by the corporate defendant but hired by Finley for his own purposes. Counts based upon alleged wilful, wanton

and reckless operation have been waived. The occurrence out of which the actions arise took place at Longmeadow on March 17, 1946, and resulted in the fall to the ground of a plane owned and operated by the plaintiff, causing injury to the plaintiff and the death of a young lady passenger in his plane to whom the plaintiff was giving instruction in its operation, the plane being fitted with dual controls for instruction purposes.  In each action, motions by the defendant for directed verdicts on the remaining counts of the declaration were denied at the close of the evidence, and verdicts, so called, were returned for the plaintiff in circumstances hereinafter stated, but on leave reserved the judge entered verdicts in favor of the defendant in the action against the corporation.  Each defendant has a bill of exceptions.  The plaintiff has a bill of exceptions in his action against the corporate defendant.

There was evidence of the tenor following: The plaintiff was instructing his student how to fly the plaintiff's plane in a rectangular course around a certain field, when the plane operated by Finley appeared upon the scene.  Finley made movements toward the plaintiff's plane.  He "dove down toward the plaintiff's plane" and appeared to pass underneath it.  He made "at least two passes like that, go in, come out under him."  He came "back again on him from the back."  "The first thing . . . [the witness, an observer on the ground, knew, the plaintiff's plane] had rolled over and crashed."  The last time the Finley plane went toward the plaintiff's plane, the plaintiff's plane took a course down — "kind of pressed downwards."  According to the plaintiff's own testimony the Finley plane was at one time less than fifty feet from the plaintiff's plane.  At another time it was in the neighborhood of a hundred feet.  Just before the crash the student, who was sitting beside the plaintiff, with a window at her right, screamed "Here he comes."  She seized the controls, pulled the plane into a climb, and "froze on the controls."  The plane lost speed, went into a spin, and crashed before the plaintiff could completely regain control.

1. The exclamation of the student, "Here he comes" was competent as explaining her act in seizing the controls and what caused her to do so. It was part of the res gestae. *Lund v. Tyngsborough*, 9 Cush. 36, 39–46. *Correira v. Boston Motor Tours, Inc.* 270 Mass. 88, 90–91. *Reardon v. Marston*, 310 Mass. 461, 464–465. It was also competent as a declaration by a deceased person under G. L. (Ter. Ed.) c. 233, § 65, as appearing in St. 1943, c. 232, § 1. See *Hicks v. H. B. Church Truck Service Co.* 259 Mass. 272, 275. Apparently it was admitted on this latter ground.

2. The evidence plainly warranted a finding that Finley's conduct was negligent in that it placed the plaintiff in substantial and unnecessary peril. The jury could find that just before the accident Finley was again aiming his plane toward that of the plaintiff. The exclamation of the student, taken in connection with the plaintiff's testimony that the student immediately "froze" upon the controls and brought about the crash, warranted a further finding that the negligence of Finley set off a direct chain of causation that ended in the plaintiff's injury. The jury could find that the involuntary act of the student, terrorized as they could believe she was by Finley's act, was not an independent intervening cause but was merely one link in the chain. It is not necessary that the exact manner in which the negligent act causes injury be foreseeable. *Leveillee v. Wright*, 300 Mass. 382, 389, and cases cited. The case falls within the sweep of such leading cases as *Ogden v. Aspinwall*, 220 Mass. 100, *Leahy v. Standard Oil Co. of New York*, 224 Mass. 352, 359, 361, *Morrison v. Medaglia*, 287 Mass. 46, and *Wallace v. Ludwig*, 292 Mass. 251, 254. See Restatement: Torts, § 433, comment e.

3. Finley is not relieved of responsibility for his own negligence by reason of a rule of the Massachusetts aeronautics commission made under the provisions of G. L. (Ter. Ed.) c. 90, § 39, as appearing in St. 1939, c. 393, § 3. (See now St. 1946, c. 583, § 3.) This rule, according to the record, read, "4. Authority of Pilot. The pilot in command of an aircraft shall be directly responsible for its safe operation."

Whatever effect this rule might have in some circumstances, it bound Finley as well as the plaintiff, and it was not the equivalent of the provision contained in the first sentence of G. L. (Ter. Ed.) c. 90, § 10, as appearing in St. 1935, c. 219, that a "licensed operator [of a motor vehicle] shall be liable for the violation of any provision" of statute or regulations by an "unlicensed operator" who is riding with him. If the plaintiff did all he reasonably could in the circumstances to see that his plane was operated safely, and we discover no evidence that he did not, there was no violation of this rule.

4. The plaintiff was not as matter of law barred of recovery by reason of violation of G. L. (Ter. Ed). c. 90, § 47, as appearing in St. 1939, c. 393, § 3. That section provides that "no. person shall operate or navigate any aircraft in this commonwealth unless such person is the holder of an appropriate effective pilot's license, permit or certificate" issued by the civil aeronautics authority of the United States; "provided, that this restriction shall not apply to . . . any person piloting an aircraft which is equipped with fully functioning dual controls when a certificated instructor is in full charge of one set of said controls and such flight is solely for instruction . . .." It was agreed that the plaintiff had been certified by the Federal civil aeronautics authority as a commercial pilot, but that he did not have an instructor's rating, and, as we understand the exhibits which are part of the record, it appeared that, although he was a resident of Massachusetts, he did not until after the accident register his Federal airman's certificate as required by G. L. (Ter. Ed.) c. 90, § 49, as appearing in St. 1939, c. 393, § 3. These provisions of law relate wholly to the licensing of operators and to the registering in this Commonwealth of licenses or certificates granted by Federal authority. Ever since Chief Justice Knowlton analyzed the subject in *Bourne v. Whitman,* 209 Mass. 155, it has been the law in this Commonwealth that the failure to have any operator's license at all does not render the driver of an automobile a trespasser on the highway but is merely evidence of negligence "unless in the case of the plaintiff, it is shown to be a contributing

cause to the injury sued for, in which case it is a bar to recovery." 209 Mass. at page 171. See *Braga* v. *Braga,* 314 Mass. 666, 672. We see no good reason why the operation of aircraft without a proper license should have any different consequences. The effect of the plaintiff's operation without having registered in this Commonwealth an appropriate airman's certificate was for the jury under proper instructions.

5. We cannot agree with the defendants that the plaintiff's plane was a trespasser in the air and a nuisance because of any failure to register in this Commonwealth the Federal certificate for this plane as required by G. L. (Ter. Ed.) c. 90, § 49, as appearing in St. 1939, c. 393, § 3. It can hardly be said that a plane is unregistered, like an unregistered automobile, merely because its Federal certificate has not been recorded or registered in this Commonwealth. But apart from this the analogy in this matter between automobiles and aircraft fails. The peculiar rule that an unregistered automobile is a trespasser on the highway and a nuisance, as first announced by a divided court in *Dudley* v. *Northampton Street Railway,* 202 Mass. 443, was expressly rested upon the categorical prohibition in the pertinent statute of the operation upon any highway of any unregistered automobile. See 202 Mass. at page 447, and *Bourne* v. *Whitman,* 209 Mass. 155, at pages 171–172. No equivalent prohibition exists with reference to the operation of Federally certified aircraft whose certificates have not been registered in this Commonwealth. On the contrary, the prohibition, found in c. 90, § 48, as appearing in St. 1939, c. 393, § 3, is against the operation of aircraft that have not been licensed or certified and registered by the civil aeronautics authority of the United States or other proper licensing authority. It is apparent throughout §§ 47, 48, and 49, that the Federal licenses, permits, or certificates both of pilots and of aircraft are regarded as controlling in the interest of uniformity and of aeronautical progress. The State merely registers for its own convenience the certificates granted its residents by Federal authority.

We do not find ourselves under any compulsion to adopt as to aircraft the trespasser and nuisance doctrine applied to motor vehicles, and such an extension of that doctrine does not commend itself to us. See *Dean* v. *Leonard*, 323 Mass. 606, 608–609.

6. Evidence that, when Finley returned after the accident to the place of business of the corporate defendant from which he had hired the plane he was driving, he gave his name as Johnson would be competent against him as indicating consciousness of liability on his part. *Hall* v. *Shain*, 291 Mass. 506, 512–513. *Sheehan* v. *Goriansky*, 317 Mass. 10, 16–17. Whether the evidence introduced at the trial was sufficient to warrant a finding that Finley himself did give the name of Johnson need not be determined in the present posture of the case. The evidence on this point may be different at another trial.

7. We are compelled, however, to hold that there was error in receiving and recording the "verdicts." The jury were sent out on April 29, 1948. They agreed at approximately 9 P.M. of that day. At about six o'clock on the following morning, April 30, one of the panel, not the foreman, died. At the opening of court at ten o'clock on that day the judge, presumably in the presence of the remaining eleven jurors, and against the objection and exception of the defendants, received and recorded sealed "verdicts," which we assume were prepared, signed, and sealed before the jury separated the night before. The sealed "verdicts" were verified in open court by the assent of only eleven jurors. These were not the verdicts of a jury of twelve men. In *Lawrence* v. *Stearns*, 11 Pick. 501, where the jury had come to an agreement during the evening and had been permitted to separate, and where, upon their reassembling the following morning, one of the jurors who had previously agreed stated that upon more mature consideration he was unable to assent, this court, speaking through Chief Justice Shaw, said, "The only verdict which can be received and regarded, as a complete and valid verdict of a jury, upon which a judgment can be rendered, is an open

and public verdict, given in and assented to, in open court, as the unanimous act of the jury, and affirmed and entered of record, in the presence and under the sanction of the court." Although in that case no "verdict" was signed and sealed up before the jury separated, the court nevertheless referred to the "convenient" practice of sealing "verdicts" agreed upon during adjournment of the court and affirming them upon the reopening of court, and in that connection said, "But in such case, the verdict is to be affirmed in open court, as the unanimous act of the jury, and in presence of the whole panel, so that each juror has an opportunity to express his dissent to the court, in case his decision has been mistaken or misrepresented by the foreman or his fellows, or in case he has been forced into acquiescence by improper means. Such an affirmation is the only evidence the court can receive of the free and unanimous assent of the jury to the verdict." This reasoning precisely covers the case at bar. *Lawrence* v. *Stearns* has been cited in a number of subsequent decisions and so far as we are aware has never been weakened. Rather it has been reinforced. *Commonwealth* v. *Carrington*, 116 Mass. 37, 39. *Commonwealth* v. *Tobin*, 125 Mass. 203, 206–207. · *Twomey* v. *Linnehan*, 161 Mass. 91, 95–96. *Charles* v. *Boston Elevated Railway*, 230 Mass. 536, 542–544. To similar effect are *Bond* v. *Wood*, 69 Ill. 282, *Norvell* v. *Deval*, 50 Mo. 272, and *Wellitz* v. *Thomas*, 122 Pa. Super. Ct. 438. The case of *Lawrence* v. *Stearns* has been reinforced also by other similar cases holding that any juror may express his dissent when a sealed verdict is read in court. *Ropps* v. *Barker*, 4 Pick. 239, 242. *Commonwealth* v. *Roby*, 12 Pick. 496, 515. *Pritchard* v. *Hennessey*, 1 Gray, 294, 296. *Kramer* v. *Kister*, 187 Pa. 227, 233–236. *Spielter* v. *North German Lloyd Steamship Co.* 232 App. Div. (N. Y.) 104. The judge, in effect, and without the consent of the defendants, accepted as verdicts the pronouncements of eleven men. It is still the law in this Commonwealth that a verdict can be rendered only by the final concurrence of twelve jurors. See · *Commonwealth* v. *Dorsey*, 103 Mass. 412, 418; *Com-*

*monwealth* v. *Welosky*, 276 Mass. 398, 401, 415; *Commonwealth* v. *Bellino*, 320 Mass. 635, 638–641; *Commonwealth* v. *Della Porta*, 324 Mass. 193; *Shears* v. *Metropolitan Transit Authority*, 324 Mass. 358. Compare *McCoy* v. *Jordan*, 184 Mass. 575, 579–583; *Commonwealth* v. *Delle Chiaie*, 323 Mass. 615. We do not understand that the case of *Humphries* v. *District of Columbia*, 174 U. S. 190, holds anything in conflict with our own views.

8. In the action against the corporation, the error in receiving the "verdicts" with leave reserved, upon which the judge subsequently entered verdicts for the defendant, did not affect the result since, in any event, verdicts ought to have been directed for the defendant at the close of the evidence. There was no evidence whatever that Finley was operating the plane of the corporate defendant as its agent, or in its behalf, or otherwise than for his own benefit as the hirer of it. The plaintiff contends that G. L. (Ter. Ed.) c. 231, § 85A, applies so that registration in the name of the corporate defendant was "prima facie evidence that it was then being operated by and under the control of a person for whose conduct the defendant was legally responsible." But this statute applies only to actions "arising out of an accident or collision in which a motor vehicle was involved," and in our view an airplane is not a "motor vehicle" within the meaning of this section. No doubt in a sense an airplane is a vehicle, and it contains a motor, but the words "motor vehicle" had been defined in our statutes as early as 1902 in terms referring only to surface vehicles. St. 1902, c. 315, § 4. A similar definition has remained continuously upon the statute book since St. 1909, c. 534, § 1. See now G. L. (Ter. Ed.) c. 90, § 1, as amended. Registration of aircraft was required by St. 1913, c. 663, § 2. Provisions relating to aircraft have always been separate from those relating to surface vehicles, and when definitions were introduced into the laws relating to aeronautics, a definition of the word aircraft was included. St. 1928, c. 388, § 1. See now G. L. (Ter. Ed.) c. 90, § 35, as appearing in St. 1946, c. 507. In our opinion, when what is now G. L. (Ter. Ed.)

c. 231, § 85A, was first enacted by St. 1928, c. 317, § 1, the words motor vehicle had both in statutory and in common usage become so fully identified with surface vehicles that if the Legislature had intended to include aircraft it would have mentioned them specifically, as was done, for example, in St. 1923, c. 370. *McBoyle* v. *United States,* 283 U. S. 25. See *Fleming* v. *Spracklin,* 64 D. L. R. 382.

9. There was no error in the denial of the plaintiff's motion, filed after trial, to amend his declaration against the corporate defendant in such a manner as to shift the alleged ground of liability.[1] At best the allowance of such an amendment was discretionary, and in our opinion there was no evidence to support the new ground which the plaintiff sought to set up.

We have dealt with all exceptions which it is necessary to deal with in reaching the present decision and also with such questions as seem likely to arise at a second trial.

In the action of *Rich* v. *Finley* the defendant's exceptions are sustained.

In the action of *Rich* v. *Standard Air Service, Inc.,* the plaintiff's exceptions are overruled, and in accordance with a statement in the defendant's brief in that case that its exceptions are to be waived if the plaintiff's exceptions are overruled, the defendant's exceptions are treated as waived, and are dismissed. Judgment is to be entered for the defendant. *So ordered.*

---

[1] The proposed amendment set out as a ground of liability that the defendant was negligent "in allowing an improper, incompetent and unskilled person" to fly its airplane. — REPORTER.