JAMES T. BIGGIO & another *vs.* CITY OF BOSTON.

Suffolk.    March 21, 1901. — June 18, 1901.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Municipal Corporations*, Liability for negligence.  *Boston*, Effect of violation of building laws.

The fact that a plaintiff has constructed his cellar in Boston below the grade required by St. 1892, c. 419, § 31, does not prevent his recovering damages from the city for injuries caused by the city negligently having stopped the outlet of an arm of the sea, so that the water overflowed its banks, crossed the street on which the plaintiff's house stood and poured into his cellar, if the plaintiff's violation of the law did not contribute to the injury.  *Semble*, otherwise, if the injury was caused by percolation, as in that case the putting of the bottom of the cellar below the established grade must have contributed to the injury.

TORT against the city of Boston to recover damages for injury to the plaintiffs' house and property alleged to have been caused by water overflowing into the plaintiffs' cellar on account of the defendant stopping the outlet of Orient Lake, so called, in that part of Boston called East Boston. · Writ, in the Municipal Court of the city of Boston, dated March 12, 1900.

On appeal to the Superior Court, the case was tried before *Gaskill,* J., who directed the jury to return a verdict for the defendant, and reported the case for the consideration and determination of this court.

The report was as follows: The plaintiffs were the owners of the premises No. 9 Chelsea Avenue in that part of Boston called East Boston and situated on the side of the hill called Orient Heights.  In the vicinity of the plaintiffs' house and on the opposite side of Chelsea Avenue was a body of water commonly known as Orient Lake, in which the tide ebbed and flowed with reasonable freedom, as it was connected with the sea by a waterway or channel, through which the waters from the lake flowed to the ocean passing under three streets by means of tunnels, but the tide in the lake never rose or fell so far as that of the open sea.

The house on the premises was built by the plaintiffs in the year 1896.  Sometime before February 22, 1899, the defendant, in order to do some repairs at the bridge over the so-called tun-

nel, at Bennington Street, one of the streets crossing the strait between Orient Lake and the sea, by its operations stopped the flow of the water through the tunnel under Bennington Street until about March 20.

On February 22, February 25, March 2, and March 10, 1899, the water in Orient Lake overflowed its banks, crossed Chelsea Avenue, and flooded the plaintiffs' premises by entering their cellar.

Notice of the overflow of the lake and the flooding of the plaintiffs' cellar was given to the defendant, and on February 28 or March 1, 1899, the defendant by its servants or agents visited the place where the overflow occurred and took the height of the water in the lake and the grade of the plaintiffs' cellar, but did not remove its barriers across the channel or waterway or do anything to prevent the lake from overflowing its banks thereafter.

St. 1892, c. 419, § 31, provides that in Boston "no cellar or basement floor of any building shall be constructed below the grade of twelve feet above mean low water."

The evidence showed, without contradiction, that the grade of the plaintiffs' cellar was only nine and five tenths feet above mean low water, instead of twelve as required by the statute.

The first named plaintiff testified, that he had lived in the vicinity for twenty years and was familiar with the geography of that portion of the city and the action of the water in Orient Lake and the extent of its rise and fall, and that previously to February 22, 1899, it had not overflowed its banks, to his knowledge, nor had he ever been troubled by water flowing upon his land.

The plaintiff further testified, that when he built his house the land about him was laid out in streets and lots; that there were four other houses already built in the immediate vicinity of his lot, two of which adjoined it; that he obtained a permit from the city of Boston in the ordinary form to build upon this location, requiring among other things that the building should conform to law, and that he did not know, by intimation or otherwise, the grade of the cellar in his building, and did not learn of it until the bringing of this suit.

The plaintiff further testified as follows: " Q. Now, Mr.

Biggio, what is the situation of this pond with your house with reference to the ability of anybody to see that the water would flow on to your premises if this pond was overrun ? Describe the situation. *A.* The situation — you mean if the flow over-run ? Well, if the water raised right over the land, you mean, and over the street ? — *Q.* Yes. *A.* Well, it would come right into my cellar. Of course we have what we call kitchen and dining room basement. — *Q.* Would that be evident to any one examining the place? *A.* Oh, any one could examine it; yes, sir."

The plaintiffs requested the following rulings: First. That the fact that the cellar of the plaintiffs' house was below the grade prescribed by law was not negligence *per se.* Second. That if the negligence of the defendant, in causing the water to flow over and upon the plaintiffs' premises, was the proximate cause of the injury to the premises, the plaintiff might recover. Third. That the flowage of water over and upon the plaintiffs' premises was the proximate cause of the injury. Fourth. That the plaintiff might recover, although his negligence first exposed him to the risk of injury, if such injury was caused by the defendant's negligent act committed after it had become aware of the plaintiffs' danger.

The judge refused to give these rulings, and directed the jury to return a verdict for the defendant as stated above.

*G. H. Russ,* for the plaintiffs.

*A. L. Spring,* for the defendant.

MORTON, J. The defendant contends that the water flooded the plaintiffs' cellar because the cellar was below the established grade, and that the plaintiffs cannot recover because their violation of the statute has contributed directly to the injury which they have sustained. If the report means that the water flowed into the plaintiffs' cellar by percolation through the intervening soil, then, notwithstanding the fact that the water had not flowed into the cellar previously, and would not have flowed into it at the times complained of, but for the stopping of the outlet from the lake by the defendant, we do not see how it can be said that the plaintiffs' act in building the cellar below the established grade did not contribute to the injury which they have sustained. But we doubt whether the report should be so

construed. There is a statement in the report that "the water in Orient Lake overflowed its banks, crossed Chelsea Avenue, and flooded the plaintiffs' premises by entering their cellar." Again, in answer to a question by his counsel, "Describe the situation," the plaintiff testified, "The situation — you mean if the flow overrun? Well, if the water raised right over the land, you mean, and over the street? . . . Well, it would come right into my cellar." What we have quoted tends to show that the water flowed over the street into the plaintiffs' cellar. The plaintiffs' testimony that "he had lived in the vicinity for twenty years . . . and that previously to February 22, 1899, [one of the occasions complained of,] it had not overflowed its banks to his knowledge, nor had he ever been troubled by water flowing on his land," also tends in the same direction. There was no evidence, so far as appears from the report, how high the water rose at the times complained of or how high above mean low water mark Chelsea Street was; but presumably it was higher than the grade fixed for cellar or basement floors. If the water in the lake overflowed Chelsea Street and flowed into the plaintiffs' cellar in that way, it is difficult to see how the fact that the bottom of the cellar was below the established grade contributed to the injury. It at least would be a question for the jury whether it did or not. The mere fact that the plaintiffs may have built their cellar below the established grade would not prevent them in such a case from recovering if their violation of the law did not contribute to the injury which they have sustained. *Newcomb* v. *Boston Protective Department*, 146 Mass. 596. The operation of natural laws is such that if the water got into the plaintiffs' cellar by percolation, the putting of the bottom of the cellar below the established grade must have contributed to the injury complained of, and therefore as matter of law the plaintiffs would not be entitled to recover notwithstanding the presence of the percolating water may have been due to negligence on the part of the defendant in stopping the outlet of Orient Lake. But if, as already observed, the water crossed Chelsea Street and flooded the plaintiffs' premises by entering their cellar in that way it cannot be said as matter of law that the plaintiffs' act in putting the bottom of their cellar below the established grade contributed to the injury.　　　　　*New trial granted.*