EZRA I. DUDLEY *vs.* NORTHAMPTON STREET RAILWAY COMPANY.

Hampshire.   September 15, 1908. — June 21, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Automobile,* Registration.   *Negligence,* In use of highway, Trespasser.   *Trespass.*
   *Way,* Public.

*Whether* St. 1903, c. 473, § 1, as amended by St. 1905, c. 311, § 2, providing that no person shall operate in this Commonwealth an automobile or motor cycle upon any public highway or private way laid out under authority of statute, unless he has been licensed and his vehicle registered as required by the statutes, except that "any automobile or motor cycle owned by a non-resident of this State who has complied with the laws relative to motor vehicles and the operation thereof of the State in which he resides may be operated by such owner on the roads and highways for a period not exceeding fifteen days without the license" should be interpreted as giving to such non-resident owners merely one period of fifteen days after once coming into this Commonwealth before being forbidden to operate their machines here without a license, and as allowing only one total period of grace during the whole license year, or *whether* it should be construed more liberally by allowing non-resident owners to operate their cars without a license for a period of not more than fifteen days upon any and every occasion when they shall come into this Commonwealth, here was not decided.
A resident of Connecticut, who during sixteen days has been operating an automobile on the highways of this Commonwealth, except for a part of a day when he drove it to West Suffield, Connecticut, and the daytime of another day when he drove it to Brattleborough, Vermont, to attend a fair, and a day and a half when the machine was in a garage in this Commonwealth undergoing repairs, has operated an automobile on the roads and highways of this Commonwealth for a period exceeding fifteen days, within the meaning of St. 1903, c. 473, § 1, as amended by St. 1905, c. 311, § 2, and therefore, although he may have complied with the laws of Connecticut relating to motor vehicles, if he has not complied with the requirements of St. 1903, c. 473, and acts in amendment thereof, he is a trespasser upon the highway.

By the provisions of St. 1903, c. 473, as amended by St. 1905, c. 311, regarding the
registering of automobiles and the licensing of operators thereof, the Legislature
created a duty on the part of persons owning or operating automobiles toward
other travellers upon the highways, and therefore one who owns and operates
upon the highway an automobile not registered as required by those statutes is
a trespasser and other travellers upon the highway owe him no duty excepting
to refrain from injuring him by acts done with a wanton or reckless disregard
of consequences.

TORT for personal injuries to the plaintiff and damage to his
automobile resulting from a collision between it and an electric
street car of the defendant.    Writ dated March 3, 1906.

The case was tried before *Brown,* J.    The material facts are
stated in the opinion.    At the close of the evidence the presiding
judge ordered a verdict for the defendant; and the plaintiff
alleged exceptions.

The case was argued at the bar in September, 1908, before
*Knowlton,* C. J., *Morton, Loring, Sheldon,* & *Rugg,* JJ., and
afterwards was submitted on briefs to all the justices.

*J. B. O'Donnell,* for the plaintiff.

*J. C. Hammond,* (*T. J. Hammond* with him,) for the defendant.

SHELDON, J.    It was provided by the statutes in force at the
time of this accident that no person should operate an automo-
bile or motor cycle upon any public highway or private way in
this Commonwealth laid out under authority of statute unless
he had been licensed to do so and unless his automobile or motor
cycle had been registered as prescribed.    Sts. 1903, c. 473; 1905,
c. 311.    But it was also provided by § 2 of the act last cited that
" any automobile or motor cycle owned by a non-resident of this
State who has complied with the laws relative to motor vehicles
and the operation thereof of the State in which he resides may be
operated by such owner on the roads and highways of this State
for a period not exceeding fifteen days without the license," etc.,
required in other cases.    The first question presented in this case
is whether the plaintiff in operating his machine in this Com-
monwealth on the day of the accident was acting in violation of
law.

He was a resident of Connecticut.    He had complied with all
the laws of that State, and had a right to operate his machine
on the highways of this Commonwealth for a period not exceed-
ing fifteen days.    He came into this Commonwealth in his auto-

mobile on Wednesday, September 13, and remained here until the day of the accident, September 29, except that on September 14 he drove to West Suffield, Connecticut, returning to Massachusetts the same evening, and that he went to Brattleboro, Vermont, on one day to attend a fair, staying there that day, but not over night. Each of these absences was merely a temporary visit to the other State, made with no intention of a permanent stay, and followed by a speedy return; and on each of these days he did actually operate his machine in this Commonwealth. After his return from Vermont and before the accident, his machine needed repairs, and was kept in a repair garage a day and a half for that purpose.

It is not necessary to determine whether the statute before us should be interpreted as giving to non-resident owners of motor cars who have complied with the laws of their own State merely one period of fifteen days after once coming into this Commonwealth before being forbidden to operate their machines on the roads of this Commonwealth without a license under its authority, and allowing only one total period of grace during the whole of the license year, or whether it should be construed more liberally by allowing non-resident owners to operate their cars without a license for a period of not more than fifteen days upon any and every occasion when they shall come into this Commonwealth. In either event, this plaintiff had exceeded his privilege. He made one visit here; and the running of his fifteen days was not interrupted by his temporary calls into other States. Nor can the period be extended by not counting the days on which his machine was laid up for repairs or on which for any other reason he did not actually operate it. He had driven it into this Commonwealth; within the meaning of the statute he was operating it during the whole of his stay. By no process of computation can it be claimed that his stay had lasted for less than sixteen days. It follows that he was acting unlawfully, in violation of the statutes referred to, at the time of the collision between his machine and the defendant's trolley car; and it must be determined whether his violation of law is necessarily fatal to his right of action.

The general rule was stated in *Newcomb* v. *Boston Protective Department*, 146 Mass. 596, that the plaintiff's unlawful act will

prevent his recovery if it directly contributed to his injury. But there is a distinction between an unlawful act which is at least a contributing cause of the accident and one which is merely an attendant circumstance or a condition, though perhaps a necessary condition, of that accident. *Mc Carthy* v. *Morse,* 197 Mass. 332. *Black* v. *New York, New Haven, & Hartford Railroad,* 193 Mass. 448, 452, and cases there cited. *Biggio* v. *Boston,* 179 Mass. 356. And if we had before us simply the case of a plaintiff who was driving his vehicle on a public way in a manner forbidden by law or without appliances required by law, but who, while himself using all due care had been injured by an accident due solely to the negligence of a third person, his own violation of law not being a contributory cause of the accident but merely one of the conditions existing at the time, it could not be said that such a plaintiff was barred of recovery by the mere fact of his violation of the law. But that is not the case which is now presented. We are dealing here with a peculiar kind of vehicle which has only recently come into use, which requires unusual care in its management, and the presence of which upon the highways has been found to involve more than ordinary risks to other travellers. As was said by the Chief Justice, speaking for the full court in *Commonwealth* v. *Kingsbury,* 199 Mass. 542, 544, " Automobiles are vehicles of great speed and power, whose appearance is frightful to most horses that are unaccustomed to them. The use of them introduces a new element of danger to ordinary travellers on the highways, as well as to those riding in the automobiles. In order to protect the public great care should be exercised in the use of them. Statutory regulation of their speed while running on the highways is reasonable and proper for the promotion of the safety of the public. It is the duty of the Legislature, in the exercise of the police power, to consider the risks that arise from the use of new inventions applying the forces of nature in previously unknown ways. The general principle is too familiar to need discussion. It has been applied to automobiles in different States with the approval of the courts. *Commonwealth* v. *Boyd,* 188 Mass. 79. *Christy* v. *Elliott,* 216 Ill. 31. *People* v. *Schneider,* 139 Mich. 673. *People* v. *Mac Williams,* 86 N. Y. Supp. 357."

Accordingly the Legislature has dealt with this subject. The rights of these parties are governed by St. 1903, c. 473, as amended by St. 1905, c. 311, which was then in force, and to which we have already referred. But we must now look more closely at the provisions of this statute. We find that, as expressed in the title, it provides comprehensively for "the registration of automobiles and motor cycles and for licensing operators thereof." Section 1 requires that "all automobiles . . . shall be registered," and provides with much detail for the registration by the highway commissioners both of the machines with identifying numbers or marks and of the names of the owners. Section 2 allows a general registration to be made by manufacturers of such machines and by dealers therein. Section 4 provides for the licensing of operators or drivers; and by § 5 all unlicensed persons are forbidden to operate such machines. Sections 7, 8, 10 and 11, and St. 1905, c. 366, contain limitations upon the speed allowed and requirements of brakes and other appliances, manifestly intended as precautions to be observed for the safety of other persons upon the highways. Section 9 fixes penalties for any violation of the act. Thus far, the provisions of the act in question substantially resemble those of the Lord's day act formerly in force, which made travelling on that day illegal simply by imposing a penalty upon any one who did so. But § 3 of the act before us (St. 1903, c. 473) goes yet further, and expressly ordains that "except as otherwise provided herein no automobile or motor cycle shall . . . be operated upon any public highway . . . unless registered as above provided." This provision, in addition to the penalties fixed for any operation of unregistered machines, forbids their being operated upon the highway at all. We cannot avoid the conclusion that it was intended to safeguard persons who were lawfully using the highways from the serious risks of injury by machines of this character which were operated in defiance of the law, and the owners of which furnished no means by which they could be identified and compelled to make proper compensation for the injuries which by their violation of law or by their mere negligence they might cause to other travellers. The Legislature, in the opinion of a majority of the court, intended to outlaw unregistered machines, and to give them, as to persons

lawfully using the highways, no other right than that of being exempt from reckless, wanton or wilful injury. They were to be no more travellers than is a runaway horse. *Richards* v. *Enfield*, 13 Gray, 344. *Higgins* v. *Boston*, 148 Mass. 484. The plaintiff as a mere trespasser upon the highway was there not only against the right of the owner of the soil and so liable to an action by him, but also against the rights of all other persons who were lawfully using the highway. He was violating a law made for their protection against him; accordingly, he was a trespasser as to them. It follows that the defendant, which was lawfully using the highway with its cars, owed to the plaintiff no other or further duty than that which it would owe to any trespasser upon its property, that is, not the duty of ordinary care, as those words are commonly used, but merely the duty to abstain from injuring him by wantonness or recklessness. *Sullivan* v. *Boston Elevated Railway*, 199 Mass. 73, 76. *Fitzmaurice* v. *New York, New Haven, & Hartford Railroad*, 192 Mass. 159, 162. *Massell* v. *Boston Elevated Railway*, 191 Mass. 491, 493.

It is difficult to see how § 3 of this act can be given any effect if it is not construed as we have stated. Sections 1 and 9, requiring registration and fixing a penalty for any violation of the act, make of themselves the operation of an unregistered automobile unlawful, as in the case of the Lord's day act already referred to, and as in the failure to use bells upon a sleigh, under R. L. c. 54, § 3. But the purpose of the statute, to afford protection and adequate means of redress to all persons upon the ways, would not then have been fully accomplished. The additional prohibition was made, we must suppose, for the purpose of regulating the rights of travellers among themselves, whether they should be walking, driving vehicles drawn by horses, or operating automobiles. It is a reasonable assumption that the Legislature intended to put these forbidden and dangerous machines outside the pale of travellers, not merely for the purpose of the criminal law, but as regards all other persons rightfully upon the streets. The addition of the prohibition was well adapted for this purpose; if not so construed, it was merely a useless iteration of the legal effect of the other provisions of the same act. And our view is confirmed by the fact that the pro-

hibition is not extended to automobiles which are merely travelling without the lights or other appliances required by §§ 10 and 11 of the act. The owner or operator may be liable to a penalty in that case; but the operation of the machine itself was not expressly forbidden.

The real question here is doubtless whether the Legislature has created a duty to other travellers upon the highways, or merely a public duty to be enforced in the ordinary administration of the criminal law, while civil rights and liabilities are left to be governed by the general rules which are applicable in such cases, between parties one of whom has been guilty of a violation of law. *Monroe* v. *Hartford Street Railway*, 76 Conn. 201, 206. *Frontier Steam Laundry Co.* v. *Connolly*, 72 Neb. 767. *Cook* v. *Johnston*, 58 Mich. 437. *Hayes* v. *Michigan Central Railroad*, 111 U. S. 228, 239. *Atkinson* v. *Newcastle & Gatshead Waterworks Co.* 4 Exch. Div. 441. In our opinion the former is the case. *Banks* v. *Braman*, 188 Mass. 367. *Newcomb* v. *Boston Protective Department*, 146 Mass. 596, 600, *et seq.*

As we consider that this case is governed by the peculiar provisions of St. 1903, c. 473, as amended by St. 1905, c. 311, we do not think it necessary to examine the decisions in *Marble* v. *Ross*, 124 Mass. 44; *O'Brien* v. *Hudner*, 182 Mass. 381; *Slattery* v. *Lawrence Ice Co.* 190 Mass. 79; *Jaehnig* v. *Ferguson Co.* 197 Mass. 364, and similar cases.

Of course the defendant would have had no right to run its car into the plaintiff's machine wantonly or recklessly; and that is the point of such cases as *Welch* v. *Wesson*, 6 Gray, 505, and *McKeon* v. *New York, New Haven, & Hartford Railroad*, 183 Mass. 271. But there was no evidence in the case at bar to warrant a finding for the plaintiff upon this ground.

Accordingly, the verdict for the defendant was rightly ordered; and we need not consider the somewhat doubtful question whether upon the evidence it could have been found that the plaintiff's conduct at the time of the collision was in other respects consistent with the exercise of due care on his part.

*Exceptions overruled.*