IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

EASTERN DIVISION

KNOXVILLE, SEPTEMBER TERM, 1915.

JAMES BLACK *v.* MAMIE MOREE.*

(*Knoxville.* September Term, 1915.)

1. HIGHWAYS. Frightening mule. Action against automobile owner. Instruction. Statute.

In an action against an automobile owner for injuries to plaintiff on a highway, where the court charged that, if defendant failed to comply with Acts 1905, chapter 172, section 1, requiring the registration of·automobiles, his conduct was negligence *per se*, and that, if an injury resulted to plaintiff by reason of such negligence and the wrongful act of defendant in violating the statute, the latter was liable for damages, also that, if he had the machine registered, he had a right to operate it, but, if it was not registered, he was liable for damages caused directly or proximately by its being operated along the public highway, such instruction was erroneous as leading the jury to conclude that defendant was liable if the mule drawing plaintiff's buggy took fright at the automobile, injury resulting consequently at a time when the automobile was on the public highway and not registered in defendant's name,

On the registration of automobiles see note in 1 L. R. A. (N. S.), 215.

On the duty and liability of operator of automobile with respect to horses encountered on the highway see notes in 1 L. R. A. (N. S.), 223, 224; 14 L. R. A. (N. S.), 251; 48 L. R. A. ·A. (N. S.), 946.

Black v. Moree.

whether the defendant was or was not negligent in the management of the automobile under the common law or sections 3 and 4 of the act. (*Post, pp.* 75-81.)

Acts cited and construed: Acts 1905, ch. 173, sec. 1.

2. HIGHWAYS.    Frightening mule.    Liability of automobile owner.    Statute.

Where defendant's automobile was not registered as required by Acts 1905, chapter 173, when he operated it on the highway, and his failure to register it had no connection with and in no way caused the frightening of plaintiff's mule, which tipped over her buggy and injured her, defendant's failure to register his car alone, without negligence in its operation, did not render him liable to plaintiff; as the statute discloses no purpose to make failure to comply with its first section, requiring registration, the ground of liability of the owner of an automobile for any further sum than the fine of $25 to $100 prescribed by section 6. (*Post, pp.* 81-91.)

Cases cited and approved: Chase v. Railroad, 208 Mass., 137; Dean v. Boston Elev. R. Co., 217 Mass., 495; Gould v. Elder, 219 Mass., 396; Bourne v. Whitman, 209 Mass., 155; Hughes v. Atlanta Steel Co., 136 Ga., 511; Shaw v. Thielbahr, 82 N. J. Law, 23; Birmingham R. R. Light & Power Co. v. Aetna Accident & L. Co., 184 Ala., 601; Railroad v. Kelley, 91 Tenn., 699; Postal Tel. Co. v. opfi, 93 Tenn., 369; Railroad v. Pugh, 97 Tenn., 625; Chattanooga L. & P. Co. v. Hodges, 109 Tenn., 331; Adams v. Inn. Co., 117 Tenn., 470; Vaulx v. Railroad, 120 Tenn., 316.

Case cited and distinguished: Dudley v. St. Ry. Co., 202 Mass., 443; Feely v. Melrose, 205 Mass., 329; Armstead v. Lounsberry, 129 Minn., 34; Atlantic C. L. Co. v. Wier, 63 Fla., 64; Hemming v. New Haven, 82 Conn., 661; Lindsay v. Cecchi, 3 Boyce (Del.), 138; Weeks v. McNulty, 101 Tenn., 495; Demming v. Merchants' Cotton Press, etc., Co., 90 Tenn., 306.

FROM COCKE

Appeal from the Circuit Court of Cocke County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—G. McHENDERSON, Judge.

MAYNARD & LEE and J. R. PENLAND, for plaintiff.

H. N. CATE and W. D. McSWEEN, for defendant.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

From a judgment for the sum of $750 against him and in favor of Mamie Moree, Black appealed to the court of civil appeals, where the judgment was affirmed, and he has brought the record before this court for review by his petition for *certiorari* and assignments of error. The action was for damages, and was tried before a jury in the circuit court. The right to recover was predicated on divers grounds indicated by the general statement hereinafter made as to facts which plaintiff's evidence tends to establish. The injury for which recovery was sought resulted as will appear from the following excerpt from plaintiff's testimony:

"On Sunday afternoon, August 18, 1912, I was injured by being thrown from an overturned buggy. The animal drawing the buggy became frightened at an automobile which was being driven by the defendant, James Black. I did not know at the time he was running the car, but have since learned that he was. The injury occurred in the public road between Piedmont and New Market, Jefferson county, Tenn., and about two miles from New Market. I live in Knoxville, Tenn., and had come up from Knoxville Saturday to

Black v. Moree.

Piedmont to visit my grandmother, and two girls named Davis came up with me.   On Sunday afternoon about four o'clock we were starting to New Market to take the train for Knoxville.   When about two miles out from New Market the buggy in which I was being driven met the automobile.   Coy Thompson was driving the buggy.   The buggy was drawn by a mule.''

Plaintiff then proceeds to relate her version of the details of the conduct of defendant, and following her evidence is that of other witnesses tending to show that the proximate cause of her injury was the negligent conduct of the defendant in the operation of the automobile.   She introduced evidence tending to show the character of the injuries she claims to have sustained. All of the foregoing of her evidence was disputed by evidence introduced on behalf of the defendant, but she introduced one matter of evidence the truth of which the defendant did not deny, and it was that on the occasion in question the defendant, Black, was the owner of the automobile; that the automobile had been registered according to the requirements of the first paragraph of the first section of chapter 173, Acts of 1905, but had not been registered by defendant, Black, when he became the owner of it, as was required by the second paragraph of the first section of that act. (A copy of the act is set out on the margin of this opinion.) [1]

[1]Chapter 173.
Senate Bill No. 246.

"An act to require owners of automobiles to register and number the same; to regulate the operation thereof; to provide for the recovery of damages for injuries caused by the unlawful running

The defendant by his evidence showed, and this fact is not in dispute, that at the time he bought the car he paid the dealers from whom he purchased the fees necessary to a full compliance with both the first and the second paragraphs of the first section of the act of 1905, and requested one of these dealers to attend to the matter of having the car registered in the name of the defendant, as required by the act, and that defendant thought such registration had been accomplished until after the occasion in question. Defendant also introduced evidence tending to show that his management of the automobile on that occasion was not negligent under the common law, and that his failure to comply with the act of 1905, in so far as there was a

thereof; and to fix the penalty for the violation of the provisions of this act.

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, that before any owner of any automobile, locomobile, motorcycle, or any other vehicle of like character, other than street railway cars hereinafter termed 'automobile,' used for the purpose of transporting or conveying persons or freight, or for any other purpose, whether such automobile is propelled by steam, gasoline, or electricity, or any other mechanical power, shall operate or permit to be operated any automobile upon any street, road, highway, or any other public thoroughfare, such owner shall register such automobile with the secretary of State, giving the motive power, and make of the same, together with the name and residence address of such owner, and shall, upon the payment of a fee of two ($2) dollars, receive from the secretary of State a certificate showing such registration, which certificate shall be numbered as issued in consecutive order, beginning with '100,' and shall thereafter, upon the payment of a fee of one ($1) dollar, register said certificate with the county court clerk of the county in which such owner may reside.

"Whenever the ownership of such automobile shall become changed, by sale or otherwise, the purchaser thereof shall be required to notify the secretary of State of such transfer and receive a certificate in his name, for which he shall pay a fee of one ($1) dollar, and he shall be required to register such certificate with the county court clerk of the county in which he resides, and pay therefor a fee of fifty (50) cents.

"Sec. 2. Be it further enacted, that a number in Arabic numerals of not less than three inches in height and one and one-half inches

failure to comply with it, did not cause the overturning of the buggy, or in any degree contribute as a cause of that event, and that in his management of the car on the occasion in question he observed all the requirements of sections 3 and 4 of the act of 1905; that his failure to observe the requirements of the second paragraph of the first section of that act had no causal connection whatsoever with the injury. He also introduced evidence tending to show that plaintiff was not, in fact, injured by the overturning of the buggy, but that she jumped clear of the vehicle, and alighted without injury. The material facts being thus in conflict, his honor the trial judge, in his general charge to the jury, incorporated therein both paragraphs of section 1, chapter 173, Acts of 1905, and with respect thereto said:

in width, corresponding to that assigned to such automobile by the secretary of State in the certificate by him issued, as hereinbefore provided for, shall be displayed in a conspicuous manner at both the front and rear of such automobile, which said number shall be plainly written, printed, stamped, or otherwise set out upon a durable and substantial plate of the size of not less than four inches in height and seven inches in length, and to be provided by the owner of such automobile. In order to prevent confusion in numbers, no municipality shall require the owner of any automobile to place tnereon any other or different number than that required in this section, and such owner shall not exhibit or permit to be attached to such automobile any other or different number than that provided for in said certificate.

"Sec. 3. Be it further enacted, that no automobile shall be run or driven upon any road, street, highway, or other public thoroughfare at a rate of speed in excess of twenty miles per hour: Provided, that any municipality shall have the authority to prescribe a lower maximum rate of speed within its corporate limits.

"Sec. 4. Be it further enacted, that whenever it shall appear that any horse or horses, driven or ridden by any person or persons, upon any street, road, highway, or other public thoroughfare, is about to become frightened by the approach of any automobile from an opposite direction, it shall be the duty of such person driving such automobile to bring the same to a full stop until such horse or horses shall have passed; and upon approaching any horse or horses from the rear it shall be the duty of the driver of any auto-

Black v. Moree.

"Now, it is insisted, gentlemen of the jury, in the first place, that the defendant failed to comply with that statute. I instruct you, gentlemen of the jury, that if you find the plaintiff is correct in this insistence, and that the defendant did operate the machine along the public highways without complying with the requirements of the first section of this act, that such conduct on his part would be negligence *per se,* and that if an injury resulted to plaintiff by reason of such negligence, and the wrongful act of the defendant in violating that statute, that he would be liable for some damages; but how these facts are, you must determine for yourselves from the proof in the case."

And on the same subject, in another part of the charge, the judge said:

mobile to slow down his rate of speed and make known his approach to such person or persons driving or riding such horse or horses, by ringing a bell or sounding a horn, and should such horse or horses appear to be frightened to stop such automobile for a time sufficient for such person or persons to alight, if desired, and take hold of such horse or horses, or otherwise control the same.

"Sec. 5. Be it further enacted, that whenever any suit for damages is brought in any court of competent jurisdiction for injuries to person or property caused by the running of any automobile in willful violation of the provisions of this act, there shall be a lien upon such automobile for the satisfaction of such recovery as the court may award whether, at the time of the injury, such automobile was driven by the owner thereof or by his chauffeur, agent, employee, servant, or any other person using the same by loan, hire, or otherwise.

"Sec. 6. Be it further enacted, that a failure on the part of any person or persons to observe and comply with the provisions of this act shall be deemed a misdemeanor, punishable by a fine of not less than twenty-five nor more than one hundred dollars.

"Sec. 7. Be it further enacted, that this act take effect thirty days after the date of its passage, the public welfare requiring it.

"Passed March 27, 1905.

"E. RICE,
"Speaker of the Senate.
"J. J. BEAN,
"Speaker pro tem. of the House of Representatives.

"Approved April 4, 1905.

"John I. Cox, Governor."

"If he had the machine registered, he had a right to operate it, but if it was not registered, then he would be liable for any damages that were caused directly or proximately by the machine being operated along the public highway."

After the conclusion of the general charge of the court one of defendant's counsel, conceiving, no doubt, that the above-quoted portion of the general charge was calculated to mislead the jury, sought to have the court cure it, and for that purpose requested the court to charge the jury as follows:

"If you should find that the defendant's car had not been registered as required by Acts of 1905, chapter 173, and should further find that this failure to register same had no connection with and in no way caused the accident in which she was injured, then this failure to so register it alone would not justify a verdict for plaintiff."

The court refused to give the special charge, assigning as a reason that he had already sufficiently covered the proposition in the general charge.

The foregoing action of the court was assigned as ground for a new trial in the motion of defendant therefor. The court overruled this motion, and in so doing said:

"The court is of opinion and doth find that by a clear preponderance of the evidence the automobile, at the time the injury complained of occurred, was being operated at a less rate of speed than twenty miles an hour, and that as soon as it was apparent that the mule

driven by plaintiff's companion was about to become frightened, the automobile was brought to a full stop. In other words, the court finds from a clear preponderance of the evidence that the defendant fully complied with the requirements of sections 3 and 4 of Acts of 1905, chapter 173, and that there was no common-law liability under the second and third counts of the declaration, and that the only basis for liability in this case is the failure of the defendant to comply with section 1 of said Acts of 1905, chapter 173, with reference to the registration of his automobile, and that because of his failure to comply with section 1 of said act he incurred absolute liability for the injury to plaintiff in this cause, and for this reason the motion for a new trial is overruled; but I would not be satisfied with the verdict, and would set it aside without hesitation, if the car had been properly registered at the time of the accident, as is prescribed by Acts of 1905, chapter 173.''

It is our opinion that the defendant's right to a fair and impartial trial was prejudiced by the action of the court in charging the jury, as shown by the foregoing excerpts, and in refusing the special charge set out supra. By the charge as given we think the jury were led to conclude that defendant was liable if the mule took fright at the automobile, and injury resulted as a consequence of the fright, at a time when the automobile was on the public highway, and not registered in the name of the defendant, whether defendant was

135 Tenn.—6

negligent or not negligent in the management of the
automobile, according to the requirements of the com-
mon law, or the provisions of sections 3 and 4 of the
Acts of 1905. The special charge was a correct state-
ment of the law. The failure of defendant to register
the car did not augment any injury plaintiff may have
sustained. No evidence tends to show that the un-
seemly conduct of the mule was in the least degree in-
fluenced by nonregistration. Registration would not
have prevented the automobile from being on the high-
way on the occasion in question, under the control of
the defendant, nor would registration have increased
or diminished the care with which it was handled. The
automobile was, as already shown, registered under the
first paragraph of section 1 of the act, and defendant
believed it was also registered under the second para-
graph of the act in his name; so under these circum-
stances there was in his mind every incentive to careful
operation of the car which actual registration would
have produced. It is therefore clear that the failure
to register was entirely outside of and apart from the
sequence of events which led up to and culminated in
the injury. For aught we know to the contrary, the
jury may have entertained the same views on the ques-
tion of negligence which the trial judge expressed in
overruling the motion for a new trial, and yet the jury
no doubt felt impelled by the excerpts from the charge
to find in favor of liability.

To sustain the action of the trial judge in respect of
his charge plaintiff relies on a line of Massachusetts

cases, the leading one of which is *Dudley* v. *Northampton St. Ry. Co.*, 202 Mass., 443, 89 N. E., 25, 23 L. R. A. (N. S.), 561. The doctrine of that case was followed in *Feeley* v. *Melrose*, 205 Mass., 329, 91 N. E., 306, 27 L. R. A. (N. S.), 1156, 137 Am. St. Rep., 445; *Chase* v. *New York C. & H. R. R. Co.*, 208 Mass., 137, 94 N. E., 377; *Dean* v. *Boston Elev. R. Co.*, 217 Mass., 495, 105 N. E., 616; *Gould* v. *Elder*, 219 Mass., 396, 107 N. E., 59. But in *Bourne* v. *Whitman*, 209 Mass., 155, 95 N. E., 404, 35 L. R. A. (N. S.), 707, the Massachusetts court, referring to the doctrine of *Dudley* v. *Northampton St. Ry. Co.*, supra, said:

"Some of us were disinclined to lay down the law so broadly, and the opinion of the court was not unanimous; but the doctrine has been repeatedly reaffirmed, and is now the established law of the commonwealth."

The court then cited *Feeley* v. *Melrose* and *Chase* v. *New York C. R. R. Co.*, supra, and, after some further observations, said the court:

"We are of opinion that the law of these last cases should not be extended to the provision of the statute requiring every operator to have a personal license to operate the car. The jury should have been instructed that the defendant's failure to have a license was only evidence of his negligence as to the management of the car."

The doctrine of the Massachusetts cases is that under the statute in that State (not materially different from our own) the legislature intended to outlaw unregistered machines, and to give them, as persons

wrongfully using the highways, no other right than that of being exempt from reckless, wanton, or willful injury. "They were to be no more travelers than is a runaway horse." The user of such a machine under those cases is treated, not as a traveler on the highway, but as a violator of the law made for the protection of travelers. But the doctrine of these cases has not been generally accepted by other courts of last resort, and we are persuaded that the Massachusetts doctrine is not supported by the weight of reason or authority. It is expressly disapproved in *Armstead* v. *Lounsberry,* 129 Minn., 34, 151 N. W., 542, L. R. A. (1915D), 628, 9 N. C. C. A., 828. In that case it was said:

"Plaintiff's violation of the law, in order to affect his case, must, like any other act, 'be a proximate cause, in the same sense in which the defendant's negligence must have been a proximate cause in order to give any right of action.' 1 Shearm. & Redf. Neg. section 94. A collateral unlawful act not contributing to the injury will not bar a recovery. *Hughes* v. *Atlanta Steel Co.,* 136 Ga., 511, 71 S. E., 728, 36 L. R. A. (N. S.), 547, Ann. Cas., 1912C, 394, 1 N. C. C. A., 429. Plaintiff's violation of law in this case is of this collateral character. There was no relation of cause and effect between the unlawful act and the collision. The registration of plaintiff's automobile was of no consequence to defendant. The law providing for such registration was not for the prevention of collisions, and had no tendency to prevent collisions. There is no pretense that the

registration of plaintiff's automobile would have had any tendency to prevent this collision. Plaintiff's failure to obey the law in no way contributed to his injury and could not bar his right of recovery.''

After discussing the Massachusetts cases, the opinion of the Minnesota court adds:

''It appears to us the weight of argument, as well as the weight of authority, is against the rule of the Massachusetts cases and in accordance with the rule we have above laid down.''

See, also, *Atlantic C. L. Co.* v. *Wier,* 63 Fla., 64, 69, 58 South., 641, 41 L. R. A. (N. S.), 308, Ann. Cas., 1914A, 126 where in the opinion of the court it is said:

''The drivers of vehicles on public highways are required by law to exercise due care and should have the vehicles in control. . . . A failure of either party in the exercise of due care, under the circumstances as they may appear, is negligence, and the consequences of negligence are governed by applicable provisions and principles of law. . . . If an unlawful act of an injured party has no causal relation to his injury that proximately results from another's mere negligence, a recovery may be had under the principles of the common law, if the plaintiff is not guilty of contributory negligence.''

In *Hemming* v. *New Haven,* 82 Conn., 661, 74 Atl. 892, 25 L. R. A. (N. S.), 734, 18 Ann. Cas., 240, it is said:

''In doing an unlawful act a person does not necessarily put himself, outside the protection of the law.

He is not barred of redress for an injury suffered by himself, nor liable for an injury suffered by another, merely because he is a lawbreaker. . . . The registration of the plaintiff's machine was of no consequence to the defendant. His failure to register and display his number in no way contributed to cause the injury. The accident would have happened if the law in this respect had been fully observed. The plaintiff's unlawful act was not the act of using the street, but in making a lawful use of it without having his automobile registered and marked as required by law.''

*Lindsay* v. *Cecchi*, 3 Boyce (Del.), 138, 80 Atl., 523, 35 L. R. A. (N. S.), 699, was an action for damages for personal injuries sustained by reason of being run into and knocked down by an automobile operated by one of the defendants. The Delaware statute provides:

"That no person shall operate a motor vehicle upon the public streets, roads, turnpikes, or highways of this State unless he had first obtained from the secretary of State a license."

The trial court charged the jury that the violation of this statute was negligence *per se*, "that is, an act of negligence itself, and renders the wrongdoer liable for an injury resulting from such misconduct." The supreme court of Delaware, in disposing of the case, said:

"The general principle is well settled that any person violating a law prohibiting the act in connection with which injury results to another person is guilty of negligence *per se;* but in this State and elsewhere the courts have very uniformly held that there must be

Black v. Moree.

a causal relation between the violation of a statute and the injury to render the defendant liable. The court below in its charge to the jury did not qualify or explain that the failure to procure a license must have contributed to the accident. . . . It is evident from a careful reading of the testimony found in the record in this case that there was no possibility of causal connection between the absence of the license and the injury to the plaintiff. Possession of a license did not insure or even tend to show skill on the part of the operator; therefore the absence of a license did not show the contrary. Whether she had a license or not was therefore clearly immaterial to the question of her negligence towards the plaintiff, and the jury should have been so instructed.''

Supporting the view that failure to register is not a link in the sequence of causation where liability is predicated on the mere use of an unregistered automobile on the highway, in addition to those already cited, are the following cases: *Shaw* v. *Thielbahr,* 82 N. J. Law, 23, 81 Atl., 497; *Birmingham R. R. Light & Power Co.* v. *Ætna Accident & L. Co.,* 184 Ala., 601, 64 South., 44.

In one of our cases where liability was predicated on the breach of a municipal ordinance it was said:

''The principle is recognized in all the cases that a liability cannot be predicated alone upon the breach of an ordinance, but it must affirmatively appear that the injury sustained resulted proximately from said breach. . . . In other words, it is not enough that negli-

gence exists, or that the ordinance was violated, unless it proximately caused the injury." *Weeks* v. *McNulty,* 101 Tenn. (17 Pick.), 495, 48 S. W., 809, 43 L. R. A., 185, 70 Am. St. Rep., 693.

"The proximate cause of an injury may, in general, be stated to be that act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another, which, had it not happened, the injury would not have been inflicted, notwithstanding the latter." *Demming* v. *Merchants' Cotton Press, etc., Co.,* 90 Tenn. (6 Pick.), 306-353, 17 S. W., 89, 13 L. R. A., 518.

See, also, *Railroad* v. *Kelley,* 91 Tenn. (7 Pick.), 699, 20 S. W., 314; *Postal Telegraph Co.* v. *Zopfi,* 93 Tenn. (9 Pick.), 369, 24 S. W., 633; *Railroad* v. *Pugh,* 97 Tenn. (13 Pick.), 625, 37 S. W., 555; *Chattanooga Light & Power Co.* v. *Hodges,* 109 Tenn. (1 Cates), 331, 70 S. W., 616, 60 L. R. A., 459, 97 Am. St. Rep., 844; *Adams* v. *Inn Co.,* 117 Tenn. (9 Cates), 470-477, 101 S. W., 428, and cases cited.

Our act of 1905 (chapter 173) discloses no purpose to make a failure to comply with its first section a ground of liability by the owner of an automobile for any further sum than a fine of not less than $25 nor more than $100. Section 6 of the act provides for this fine, and makes the failure to observe and comply with the provisions of the act a misdemeanor. Section 5 provides for a lien on the automobile to satisfy such recovery as the court may award for injuries to person or property caused by the running of any automo-

Black v. Moree.

bile in willful violation of the provisions of the act. The provisions referred to are set out in sections 3 and 4. It is manifest that injuries to person or property could not be caused by running in violation of any other section or sections. No other section undertakes to regulate the speed and the precautions to be observed while running; and, though a running of the automobile might occur while its owner was in default in respect of the observance of sections 1 and 2, it is manifest, as before observed, that such running in violation of those sections could not by any possibility cause an injury to person or property. In a text-book of acknowledged merit it is said:

"It would seem that ordinarily at least the failure to register could have no effect either upon the question of liability for injuring another, or upon the right to recover for injury, as it is difficult to perceive how it could be a proximate cause of an injury." Elliott on Roads & Streets (3d Ed.), vol. 2, section 1115.

The construction of our statute should be made with the principle just expressed in view. The penalties denounced by section 6 are expressed in plain terms, and it is not for the judicial department, by construction, to give section 5 a penal effect when its obvious purpose is remedial only. If the framers of the statute had intended to add any penalties than those expressed in section 6, they would, no doubt, have expressed such purpose in words of clear import. The penalties declared in section 6 were deemed sufficient to induce a compliance with sections 1 and 2. A construction giv-

ing section 5 a penal effect would produce not only ab-
surd, but unjust, results, such as its framers did not
intend to flow from its passage. The general object
of the act is the regulation of the operation of automo-
biles on public highways. Its title expresses this ob-
ject. The provisions in its body are intended to effec-
tuate such purpose. Its passage is a legislative recog-
nition of the right of travelers to use automobiles as
vehicles of transportation. The right, however, in the
interest of the safety of other users of the highway,
was onerated by the act with the duties imposed by
sections 3 and 4. On the other hand, sections 1 and 2
are remedial in character. They are intended to pro-
mote discovery of the responsible owner of an auto-
mobile where its operation on the highway has caused
an injury to person or to property. Pertinent to the
character of sections 1 and 2 is the following observa-
tion in one of the opinions of the supreme court of
New Jersey:

"The fact that the plaintiff was licensed at the time
of the accident was not an essential part of his case,
or even relevant to the issue as framed, since the pos-
session of such a license had no tendency to avert col-
lisions, as do brakes, signal trumpets, and lighted
lamps at night. . . . What is gained by the display
of a license number is not the avoidance of collisions,
but the more ready identification of a machine and its
responsible owner. To the argument that the absence
of this means of identification had a tendency to make
the plaintiff less careful the answer is that such a con-

Black v. Moree.

sideration is too remote to be relevant in the legal meaning of that term which is derived, not by the strict processes of logic, but of the exigencies of trial by jury.''

In the present case the motion for a new trial should have been sustained: First, because the trial judge had misdirected the jury; and, second, because he was dissatisfied with the verdict. *Vaulx* v. *Railroad,* 120 Tenn. (12 Cates), 316, 108 S. W., 1142.

The judgment of the court of civil appeals is reversed, and the cause remanded for a new trial.