JOHN GONDEK *vs.* CUDAHY PACKING COMPANY.
JOSEPHINE GONDEK *vs.* SAME.
EDMOND GONDEK *vs.* SAME.
MARY GONDEK *vs.* SAME.

Middlesex.   March 4, 1919. — May 21, 1919.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Motor Vehicle*, Registration. *Trespass. Corporation. Agency*, Scope of employment. *Nuisance. Practice, Civil*, Exceptions. *Waiver. Words*, "Nonresident."

A corporation, which was incorporated under the laws of the State of Maine and which for more than thirty days has had several places of business in this Commonwealth and also one in New Hampshire and has executive offices in Boston but none in New Hampshire, does not come within the definition of "nonresident," given in St. 1914, c. 204, § 1, under the provisions of the statute

relating to registration of motor vehicles, which includes only "residents of States or countries who have no regular place of abode or business in this Commonwealth for a period of more than thirty days in the calendar year."

A motor vehicle of such a corporation, while being operated upon a public way in this Commonwealth without having been registered here, is an outlaw.

A corporation, which was incorporated in the State of Maine and had several places of business in this Commonwealth and a store in Nashua in the State of New Hampshire where a general meat packing business and the business of storing furs and furniture were conducted, permitted the general manager of the Nashua store to use for his own business and pleasure around Nashua a motor vehicle owned by it and duly registered in New Hampshire but not in this Commonwealth. Such general manager directed a subordinate in the corporation's employ to transport from Nashua to a city in this Commonwealth, in such a motor vehicle registered in New Hampshire but not in this Commonwealth, a gas stove which the general manager had stored for several months in the defendant's storehouse and had sold to his cousin in Lawrence. While on a public way in this Commonwealth, the operator of the motor vehicle negligently injured another traveller. In an action against the corporation for the injuries received, it was *held*, that a finding was not warranted that the motor vehicle was being operated on business of the corporation; and *also* that a finding was not warranted that the Nashua general manager had authority to cause the defendant's motor vehicle to be operated unlawfully upon a public way in this Commonwealth on his personal business.

The consequence of one permitting a nuisance, such as an unregistered motor vehicle operated upon a highway, is that he is responsible for injuries caused thereby even although such vehicle is at the moment when such injuries are caused being used in the business or pleasure of another. Per RUGG, C. J.

At the trial of the action above described, it appeared that the injury to the plaintiff occurred in June, 1918, and there was evidence tending to show that the motor vehicle was not registered in Massachusetts in the year 1917 and that during that year the general manager had used it five or six times to go from Nashua in New Hampshire to Lawrence in this Commonwealth to visit his family. There was no evidence warranting a finding that such trips were under circumstances likely to come to the defendant's attention, nor was there any evidence of any use of the motor vehicle in Massachusetts in 1918 previous to the injury to the plaintiff. *Held*, that a finding was not warranted that the defendant knew or ought to have known of the unlawful use of the motor vehicle in Massachusetts by its Nashua general manager for his own business or pleasure so that its acquiescence in such use on the occasion when the plaintiff was injured might be implied.

At the trial of the action above described, after both parties had rested and the judge had denied a motion by the defendant that a verdict be ordered in its favor and had refused to rule in substance that there was no evidence warranting a finding that the general manager had authority from the defendant to use the unregistered motor vehicle on his own business in Massachusetts, the defendant's attorney, in objecting to the form of a special question which the judge was propounding to the jury, stated that the defendant contended that the real question was whether the general manager had authority, or whether it was within the scope of his employment, to permit the use of the automobile on his own business, and whether that permission amounted to the consent of the

defendant, and further stated that he (the attorney) thought, that, if the manager had authority generally to use the automobile for his own business, it would follow that he would have authority to use it in Massachusetts as well as in Nashua for that purpose, and that he thought that was the real question at issue in the case and that whether or not the general manager had authority to permit the commission of an illegal act was not the issue from his point of view. The judge asked the defendant's counsel, "You would like to have added, 'Authority to operate the automobile upon business of'" the general manager? and the defendant's counsel replied, "Yes, and then whether it happened on the highways of Massachusetts or not I don't care." *Held,* that it could not be said that the remarks of the defendant's counsel, occurring after the denial of the defendant's motion and the refusal of its requests for rulings, constituted a waiver of the requests.

FOUR ACTIONS OF TORT, the first action being for personal injuries and the destruction of a horse and wagon alleged to have been caused by a collision between the horse and wagon and a motor vehicle driven by one Larivee, alleged to have been an employee of the defendant acting negligently and within the scope of his employment, and for consequential damages resulting from personal injuries to the wife of the plaintiff in that action, the plaintiff in the second action; and the other three actions being for personal injuries received in the same accident. Writs dated July 13, 1918.

In the Superior Court the actions were tried together before *Hitchcock,* J. The material evidence is described in the opinion.

At the close of the evidence the defendant moved that verdicts be ordered in its favor. These motions were denied. The defendant then asked for, and the judge refused to give, rulings of law, of which the following are material to the decision:

"1. On all the evidence the plaintiffs are not entitled to recover.

"2. On all the evidence the automobile of the defendant was not being used on the business of the defendant at the time of the accident.

"3. On all the evidence the automobile of the defendant was not being used with the permission of the defendant at the time of the accident.

"4. The automobile was duly registered according to the laws of the State of New Hampshire, and was not being used in Massachusetts in violation of any laws of the Commonwealth of Massachusetts, it was therefore duly registered and not a trespasser upon the highways.

" 5. If the automobile was being used at the direction and on the business of one Lacaillade, the manager of the defendant, such use was not in the course of the business of the defendant, and the knowledge and permission of Lacaillade was not knowledge and permission of the defendant.

" 6. The permission of any officer or manager of the defendant to use the defendant's automobile for any use other than that of the defendant's business was *ultra vires* and was not therefore the act of the defendant.

" 7. There is no evidence on which the jury would be warranted in finding that the automobile at any time during the trip was being used on the business of the defendant.

" 8. The defendant was a non-resident within the meaning of the automobile statutes and the automobile was duly registered in the State of the defendant's residence, it was therefore legally operated upon the highways of the Commonwealth."

" 13. The negligence of Larivee, the operator of the automobile, was not the negligence of the defendant, and the plaintiff is not entitled to recover."

" 15. Lacaillade was not an officer or director of the corporation, and any *ultra vires* act of his should not bind the corporation.

" 16. There is no evidence that any officer or director of the corporation assented to or had knowledge of Lacaillade's use of automobile for his own purposes."

The judge submitted certain special questions to the jury. The counsel for the defendant objected to the form of the third question, and stated that the defendant contended that the real question was whether Lacaillade had authority, or whether it was within the scope of his employment, to permit the use of the automobile on his own business, and whether that permission amounted to the consent of the defendant; and he further stated that he thought that, if the manager had authority generally to use the automobile for his own business, it would follow that he would have authority to use it in Massachusetts as well as in Nashua for that purpose, and that he thought that was the real question at issue in the case; that whether or not Lacaillade had authority to permit the commission of an illegal act was not the issue from his point of view. The judge asked the defendant's counsel, "You would like to have added, 'Authority

to operate the automobile upon business of Mr. Lacaillade?'" and the defendant's counsel replied, "Yes, and then whether it happened on the highways of Massachusetts or not I don't care." The judge thereupon re-framed the third question.

The special questions as submitted to the jury, with the answers of the jury thereto, were as follows:

"1. Was Larivee, an employee of the defendant company, acting within the scope of his employment at the time when the accident occurred?" The jury answered, "Yes."

"2. If Larivee, at the time when the accident occurred, was not acting within the scope of his employment by the defendant company, was he acting in furtherance of the personal business of Lacaillade, the manager of the business of the defendant company?" The jury answered, "Yes."

"3. Did Lacaillade, the manager of the business of the defendant company of Nashua, have authority from the defendant company to direct or permit Larivee, an employee of the defendant company, to operate the automobile upon Lacaillade's personal business on the highway in Massachusetts at the time the accident occurred?" The jury answered, "Yes."

The jury found for the plaintiff in the first action in the sum of $1,000, for the plaintiff in the second action in the sum of $1,500, for the plaintiff in the third action in the sum of $100, and for the plaintiff in the fourth action in the sum of $2,000. The defendant alleged exceptions.

*H. S. Avery,* for the defendant.

*A. S. Howard,* for the plaintiffs.

RUGG, C. J. These are four actions of tort whereby the plaintiffs seek to recover compensation for injuries sustained by them on June 22, 1918, through collision with an automobile owned by the defendant. Confessedly the plaintiffs, at the time travellers on a highway in Dracut in this Commonwealth, were in the exercise of due care and the operator of the automobile was negligent.

The defendant is a corporation domiciled in Maine, but had maintained in 1918 for more than thirty days before the plaintiffs' injuries several places of business in Massachusetts. It also maintained at Nashua, in the State of New Hampshire, a place of business in connection with which the automobile in

question was used. It was registered in New Hampshire but not in Massachusetts. It was purchased in July, 1917, by the defendant on requisition from one Lacaillade who for over five years had been manager of the defendant's business at Nashua. It appeared that in 1917 Lacaillade used the automobile five or six times to go from Nashua to Lawrence in this Commonwealth, chiefly on business of his own, but there was no evidence on the point whether it was registered in Massachusetts in that year. He occasionally, and whenever he so desired, used it in his own business around Nashua without complaint by the defendant. He had sole control over its use. He had ten or twelve men under him in the employ of the defendant at Nashua where a general meat packing business and the business of storing furs and household furniture was conducted. There were executive officers of the defendant in Boston but none in New Hampshire. A general superintendent visited the Nashua place of business every other week, and perhaps once or twice a year other officers of the defendant went there. On June 22, 1918, Lacaillade having sold a gas stove, which he had stored without pay for several months in the defendant's storehouse at Nashua, to his cousin in Lawrence, Massachusetts, asked one Larivee, employed by the defendant as chauffeur at Nashua, to take the stove to its new owner. It was while returning to Nashua from that journey to Lawrence that the automobile came into collision with the plaintiffs, causing the injuries here in suit.

The automobile at the time of the accident was an outlaw upon the highways of Massachusetts. The defendant was not a "non-resident" within the meaning of St. 1909, c. 534, § 1, as amended by St. 1914, c. 204, § 1, in force on the day of the accident. By that statute "non-resident" as used in the automobile laws, in substance, is defined to mean "residents of States or countries who have no regular place of abode or business in this Commonwealth for a period of more than thirty days in the calendar year." It is conceded that the defendant had places of business in Massachusetts. Therefore the provisions of the automobile law respecting non-residents were not applicable to it. It was subject respecting all its automobiles within the Commonwealth to the absolute prohibition against operating them upon the highway unless registered in accordance with our law. St. 1909, c. 534, § 9.

*Dudley* v. *Northampton Street Railway,* 202 Mass. 443. *Holden* v. *McGillicuddy,* 215 Mass. 563, 565. *Dean* v. *Boston Elevated Railway,* 217 Mass. 495, 498. The words of the statute are so plain as to render any other construction not rationally possible. If it be thought harsh to impose such stringent liability upon actual non-residents who have places of business in this and other States, relief must be sought from the Legislature and not from the judiciary. See St. 1919, c. 88.

There is no evidence whatever to the effect that the automobile at the time of the accident was being operated on the business of the defendant. The evidence shows that it was a personal matter of Lacaillade upon which it was driven into Massachusetts.

There is no evidence on this record which warrants the conclusion that the defendant expressly or impliedly authorized Lacaillade, the manager of its Nashua branch, to operate or cause to be operated its automobile on the highways of Massachusetts on his own business. There was evidence from which the inference might be drawn that Lacaillade was authorized to use the automobile in the neighborhood of Nashua on his own business and pleasure. The general course of conduct would constitute evidence to that end. But it was a wholly different matter to use the automobile in Massachusetts. The operation of the automobile in Massachusetts by the authority of the defendant not only would subject it to a fine, St. 1909, c. 534, § 10, but also would render it liable to heavy and unusual civil liability. It would be responsible for injuries caused by the negligent operation of the automobile even though not at the time being used in its business. The consequence of one permitting a nuisance, such as an unregistered automobile operated upon a highway, is that he is responsible for injuries caused thereby even though it is at the moment being used in the business or pleasure of another. *Gould* v. *Elder,* 219 Mass. 396. *Koonovsky* v. *Quellette,* 226 Mass. 474. Authority to impose liabilities of this kind upon the defendant, having their origin in authority to commit a crime, cannot be inferred from mere employment as manager of a business dealing in the necessities of life. For all things done within the natural course of the management of its Nashua branch and in furtherance of its business by Lacaillade, the defendant would be liable. On the

occasion in question the automobile was not being used to promote its affairs but for something quite outside its business.

There is nothing in the evidence which warrants the inference that the defendant knew or ought to have known that Lacaillade was using the automobile in Massachusetts for his own business or pleasure, so that acquiescence in such use might be implied. The day of the accident was the first time it had been used in Massachusetts in 1918. If it be assumed in favor of the plaintiffs that the automobile was not registered in Massachusetts in 1917, the use of it by Lacaillade five or six times to visit his family in Lawrence is not enough to fasten knowledge, consent and responsibility upon the defendant under all the circumstances. It does not appear that this use was at times and under conditions likely to come to the attention of the defendant.

The defendant's requests for instructions plainly cover this point. The remarks of counsel respecting the form of the third question did not amount to a waiver of his requests and do not appear to have misled the judge in any particular. They were made after the requests for rulings had been denied and the law thus established for the trial.

*Exceptions sustained.*