EDWARD S. PIERCE *vs.* WALTER K. HUTCHINSON.

Middlesex. March 27, 1922. — June 19, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & JENNEY, JJ.

*Motor Vehicle,* Registration. *Way,* Public: use of by unregistered motor car. *Trespass. Words,* "Dealer."

A motor vehicle is unlawfully operated upon a public way if the only registration numbers displayed upon it are those procured by and issued to a former owner, who had died during the year of the registration and whose widow, without an administrator of his estate having been appointed, purported to sell the motor vehicle to the person who caused it to be upon the public way.

The word "dealer," as used in St. 1909, c. 534, § 4, and in § 1 of that chapter as amended by St. 1915, c. 16, § 1 (see now G. L. c. 90, § 1), includes only every person whose business as a whole is principally that of buying, selling or exchanging motor vehicles on commission or otherwise or whose principal business is the renting of motor vehicles, and does not include one who conducts in a garage a business of manufacturing or dealing in motor vehicles but has another business which is his principal business.

At the trial of an action for personal injuries resulting from a collision with a motor vehicle alleged to be unlawfully operated upon the highway, it appeared that the vehicle was in the control of the defendant, who was the proprietor of a garage, that he entrusted the management of the garage to a superintendent, and that the largest part of the business there conducted was the dealing in cars and that a Ford agency and service station were maintained there for the sale, storage, renting and repairing of Ford cars. The defendant testified that he did not spend much of his time at the garage, that he operated three grocery and provision stores and also carried on a farm. *Held,* that a finding was warranted that, at the time of the collision, the defendant was not a person engaged principally in the business of buying, selling or exchanging motor vehicles on commission or otherwise, or whose principal business was the renting of motor vehicles.

A motor vehicle, which is caused to be operated upon a public way by one who, although he has applied for and has received a certificate 'of registration under St. 1912, c. 400, § 1, is not a manufacturer of or dealer in motor vehicles, which is not registered in the name of its owner and which bears only registration numbers which had been issued to a former owner who had died during the registration year, is unlawfully upon the highway.

If the person in possession and control of an unregistered motor vehicle bearing improper registration numbers rents it to one whose chauffeur runs into and injures a traveller upon a public way, he is liable for personal injuries so received, regardless of whether any negligence of the chauffeur contributed to cause the injury.

TORT for personal injuries alleged to have been received when the plaintiff on August 26, 1916, was run into by an automobile driven by one Keegan acting as chauffeur for one Gruber. Writ dated October 19, 1916.

The original defendants named in the writ were the defendant, Walter K. Hutchinson, and one Edward Gruber. No service of the writ was made upon Gruber. Before the trial the plaintiff filed a discontinuance as against him, and during the trial was permitted to amend the writ by striking out the name of said Gruber as a party defendant.

The declaration as amended was in five counts. As verdicts for the defendant were ordered upon the first and second counts, only the third, fourth and fifth are material. In the third count the plaintiff alleged that the defendant, the owner of a certain garage known as the Linwood Garage in Arlington, was on August 26, 1916, the owner or had the possession and control of a certain automobile, which on that day he, "his servants or agents had caused or allowed or permitted . . . to be on . . . [a] highway and that said automobile was not duly and legally registered according to the provisions of St. 1909, c. 534, and amendments thereto, and was therefore illegally upon said highway and trespassing thereon; that said automobile was so carelessly and negligently operated and controlled that" the plaintiff, lawfully travelling on the highway, was struck by it and was injured.

In the fourth count, the plaintiff added allegations "that the defendant, his agents or servants well knew that said automobile was unregistered and caused, or allowed, or permitted said unregistered automobile to be driven on the public highways in this Commonwealth; that being unregistered, said automobile was

unlawfully upon said highways and was a trespasser thereon; that while said automobile was unlawfully travelling on Main Street in . . . Malden, . . . and was a trespasser thereon," the plaintiff, lawfully travelling thereon was struck by the automobile and injured.

The fifth count, added by amendment, set forth the circumstances of the accident in detail and added allegations that, at "the time of said accident the steering gear and brakes of" the automobile "were so out of order and in such a defective and dangerous condition that said car could not be and was not in fact effectively controlled by the driver thereof so as to avoid running into the plaintiff;" described the circumstances of the car's registration in detail, and added allegations that the automobile "prior to said accident came into the ownership and into the control of the defendant, who a few days before the accident let said car for hire to one of the persons who was riding in it at the time of the accident. The defendant with knowledge of the fact that said car at no time prior to said accident, and while in his control, was legally registered under the laws of the Commonwealth or bore plates showing its true registered number, and that the car was in a dangerous and defective condition in respect both of its steering gear and brakes permitted said car to be operated upon public highways of the Commonwealth and upon said Main Street at the place of said accident."

The action was tried before *Sisk,* J. Material evidence is described in the opinion.

Portions of the charge, referred to in the opinion as excepted to by the defendant, were as follows:

"You will recall, gentlemen, in my charge in discussing the due care of the plaintiff I spoke of his duty or what he should do. Should you find that at some time after leaving the car he was confronted with a sudden emergency and some question was raised as to the language I used in that charge, upon that point considering what I then said as unsaid and take what I am now giving you as covering that situation. Now, if you should find the plaintiff was confronted with a sudden emergency and he did what you found that he did the standard of his care is what reasonably careful men do when confronted with a like emergency, in other words, what would a reasonably careful man

do under the circumstances which this plaintiff found himself in.

"Now, upon another point along the same lines, I want to give you this further instruction which elaborates what I undertook to say as to the right the plaintiff had to assume that others using the highway would use it lawfully. The plaintiff has a right to assume that the operator of a motor car would obey the law in reference to slowing down or stopping if necessary on approaching the trolley car while it was discharging its passengers, but that right thus to assume continued only until the plaintiff either knew or ought to have known or realized that the operator of the motor car was not going to obey the law or was not in fact obeying the law, when the moment arrived it became the duty of the plaintiff to do what he reasonably could to escape injury. Now, I say that with respect to the question that is going to you on the question of the due care of the plaintiff and in considering that I want you to keep in mind that it has no bearing on the general question of the defendant's liability, for my own purposes I want that special question on the due care answered."

The judge submitted to the jury special questions, which, with the jury's answers, were as follows:

"1. Was the defendant on August 25, 1916, a person engaged principally in the business of buying, selling, or exchanging motor vehicles on commission or otherwise, or whose principal business. was the renting of motor vehicles?" The jury answered "No."

"2. Was the Ford car that hit the plaintiff allowed by the defendant to be operated upon the public streets or highways of the Commonwealth on August 26, 1916, having upon it as its. only number plates, the plates formerly issued to Rogers, then deceased, and bearing the number 52108?" The jury answered "Yes."

"3. Did any want of due care on the part of the plaintiff himself directly contribute to the accident?" The jury answered "No."

The jury found for the plaintiff in the sum of $9,794.28; and the defendant alleged exceptions.

*W. D. Gray,* for the defendant, submitted a brief.

*W. G. Thompson,* (*G. E. Mears* with him,) for the plaintiff.

CROSBY, J. This is an action to recover for personal injuries.

received by the plaintiff when he was run into by a Ford run-
about on August 26, 1916. The plaintiff, who had been a pas-
senger on an electric car just before the accident, alighted from
the car at a regular stopping place, and while proceeding toward
the sidewalk was struck and knocked down by the runabout
driven by one Keegan who was then acting as chauffeur for
Edward Gruber, who sat beside him. Keegan was not in the
defendant's employ.

In the spring of 1916 the machine in question was owned by
Charles P. Rogers and duly registered in his name under number
52108; he died some time before June of that year. "There was
no administration of his estate" but his widow undertook to sell
the runabout in June, 1916, to the defendant through his agent
who paid $310 for it; the defendant then took and thereafter
retained possession of it in his garage. At that time the number
plates bearing Rogers' number were attached to it and were not
afterwards removed nor were any other number plates placed on
it before the time of the accident.

The defendant obtained from the Massachusetts Highway
Commission for the year 1916 an automobile dealer's license
number 0866, and had in his garage half a dozen number plates
bearing that number. He never gave any instructions to have
any of these plates attached to the runabout although he knew
it was in his garage. He entrusted the running of the garage
to one Stearns as manager. The largest part of the business there
conducted was the selling of cars; and a Ford agency and service
station were maintained there for the sale, storage, renting and
repairing of Ford cars. The defendant testified that he did not
spend much of his time at the garage, that he operated three
grocery and provision stores and also carried on a farm.

The record recites that on the afternoon of August 25, 1916,
Stearns, "acting within the scope of his authority, made an oral
agreement with said Gruber for the letting of said runabout to
said Gruber for three days to take a trip. Under the agreement
Gruber was to supply his own chauffeur, pay [for] his own gaso-
lene, and return the car in as good condition as it was when he
took it, outside of wear and tear, and pay the defendant a certain
sum per day for the use of the car. The accident happened while
the car was being used by Gruber and driven by Keegan under

this arrangement." When the car was taken from the garage by Keegan, the defendant was not present; later in the day Keegan and Gruber returned in the car and complained about its condition, and the defendant got into it with Keegan, drove a short distance, returned to the garage and again delivered it to Keegan; stating to them that "it was all right." The car was not again in the garage until after the accident.

The amended declaration contains five counts. The presiding judge directed a verdict for the defendant on the first and second; and, subject to the defendant's exception, submitted the third, fourth and fifth to the jury, instructing them however that the evidence did not warrant a verdict for the plaintiff on any of these counts charging the defendant with liability by reason of permitting an automobile in a dangerous and defective condition to be upon the highways.

The statute requires that the person in whose name a motor vehicle is registered shall be the owner thereof. St. 1909, c. 534, § 2, as amended by St. 1912, c. 400, § 1. It is also provided by St. 1909, c. 534, § 4, that "Every manufacturer of or dealer in motor vehicles may make application, by mail or otherwise, . . . for a general distinguishing number or mark, instead of registering each motor vehicle owned or controlled by him . . . and the commission may grant the application . . . and, issue to the applicant a certificate of registration. . . ." These statutes make it plain that only the owner, or, if a dealer or manufacturer, the person either owning or in control of a motor vehicle is entitled to registration. *Gould* v. *Elder*, 219 Mass. 396. *Downey* v. *Bay State Street Railway*, 225 Mass. 281. *Shufelt* v. *McCartin*, 235 Mass. 122. *Harlow* v. *Sinman, ante*, 462. We need not determine whether the defendant was the owner of the runabout, as there was ample evidence to warrant a finding that it was controlled by him within the meaning of § 4. The registration in the name of Rogers who died before June, 1916, could not protect the defendant.

The important question is: Was the automobile legally registered in the name of the defendant as a dealer? While a certificate of registration as a dealer was duly issued to the defendant and the issuance of such a certificate creates a presumption that he is lawfully entitled to it, yet it is not conclusive evidence as

against the plaintiff. *Gould* v. *Elder, supra. Koonovsky* v. *Quellette,* 226 Mass. 474. Upon the evidence it was for the jury to determine whether the defendant was in fact a dealer and entitled to the general distinguishing number or mark assigned to him.

The statutory definition of the word "dealer" in force in 1916 includes "every person who is engaged principally in the business of buying, selling or exchanging motor vehicles, on commission or otherwise, or whose principal business is the renting of motor vehicles." St. 1909, c. 534, § 1, as amended by St. 1915, c. 16, § 1. The majority of the court construe the definition of "dealer" as including every person whose business as a whole is principally that of buying, selling or exchanging motor vehicles on commission or otherwise, or whose principal business is the renting of motor vehicles. The contention of the defendant is that the statute refers only to the business conducted at his garage and that if his business there has the required characteristics he is a dealer under the statute. We cannot agree with that contention. It is contrary to the plain meaning of the definition. The judge correctly construed the statute in his instructions to the jury. The evidence was undisputed that besides running the garage the defendant was engaged in operating three grocery and provision stores and that he carried on a farm and spent but little of his time at the garage, which he entrusted to the management of Stearns. From this evidence and the rational inferences to be drawn therefrom, we cannot say that the jury were not warranted in finding, as they did find in answer to a special question submitted to them, that on August 25, 1916, the defendant was not a person engaged principally in the business of buying, selling or exchanging motor vehicles on commission or otherwise, or whose principal business was the renting of motor vehicles. The result is that the runabout was not legally registered but was a nuisance upon the highway, and the driver a trespasser. *Dudley* v. *Northampton Street Railway,* 202 Mass. 443. *Chase* v. *New York Central & Hudson River Railroad,* 208 Mass. 137. *Bourne* v. *Whitman,* 209 Mass. 155. *Gould* v. *Elder, supra. Fairbanks* v. *Kemp,* 226 Mass. 75. *Gondek* v. *Cudahy Packing Co.* 233 Mass. 105.

If the automobile had been legally registered in the name of the defendant, it was illegally operated on the highway at the time of the accident as it did not have its regular number dis-

played conspicuously thereon on two number plates in accordance with St. 1909, c. 534, §§ 5 and 9. At that time the only number plates attached were those issued to Rogers; their use was not a compliance with the statute.

The evidence warranted findings that the runabout, while under the control of the defendant, was rented by him through his agent, acting within the scope of his authority, to Gruber for three days; that he allowed it to be operated at the place of the accident, not only without registration, but without lawful and proper number plates. If the jury found these facts, the machine was an outlaw upon the highway and the defendant would be liable for any injury caused by it to the plaintiff regardless of whether any negligence of the driver contributed to the injury. *Dudley* v. *Northampton Street Railway, supra. Chase* v. *New York Central & Hudson River Railroad, supra. Koonovsky* v. *Quellette, supra. Evans* v. *Rice,* 238 Mass. 318. The ground of liability is the illegal act of the defendant in permitting or allowing an unregistered car, without lawful number plates, to be operated upon the highways, and is wholly distinct from an act of negligence. *Evans* v. *Rice, supra.*

We need not consider whether contributory negligence of the plaintiff would be a bar to recovery, as the jury expressly found in answer to a special question submitted to them that want of due care on the part of the plaintiff did not directly contribute to the accident. It follows that the exceptions to the giving of the plaintiff's eighth request and the refusal to give the defendant's nineteenth are immaterial. The jury were told that the plaintiff might rely to some extent upon the belief that the driver of the automobile would observe the law; that instruction was correct. *DiIorio* v. *Jordan Marsh Co.* 211 Mass. 280. The jury could have found that the plaintiff was called upon to act in a sudden emergency. If they so found, the instructions given on this branch of the case and which related to his care were in accordance with well settled principles. *Lemay* v. *Springfield Street Railway,* 210 Mass. 63, 67.

Many of the exceptions have not been argued and are treated as waived. We find no error in the rulings made, in the refusals to rule, or in the instructions given.

*Exceptions overruled.*